[Crim. No. 1290.   Third Appellate District.—April 10, 1934.]

THE PEOPLE, Respondent, v. MARTIN LEACH,
Appellant.

Robert G. Partridge for Appellant.

U. S. Webb, Attorney-General, and Jess Hession, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—An information was filed against defendant, charging him with having committed two acts of manslaughter and with having driven an automobile while under the influence of intoxicating liquor. Upon the trial thereon a jury found defendant guilty on the three charges, recommending leniency on the two counts of manslaughter and a sentence to the county jail upon the charge of driving

while intoxicated. Thereafter upon a motion for new trial the court granted the motion as to the third count and denied the motion as to the two acts of manslaughter and in due time sentenced the defendant to be imprisoned in the state prison, the terms thereof to run concurrently. This appeal is from the order denying the motion for new trial as to the charges of manslaughter and from the judgment as entered.

The record discloses that defendant went to the city of Stockton to transact certain business, which was concluded during the afternoon. In the evening defendant then met his friend Clark, one of the men killed in the accident hereinafter referred to, and they spent the night in social drinking. About 6:30 the next morning defendant and Clark, neither having been to bed, went to the garage to get defendant's car, their plans being to attend a shooting tournament near by. Each had a shotgun and the record discloses that during the early morning there was some shooting from the hotel window, allegedly done by Clark, and also some shooting at the lights of the garage by defendant. At the garage these two met Coleman, the night man at the garage, and invited him to accompany them to the shooting range. Coleman had not been drinking, he having just come off his shift when Leach and Clark entered. Coleman, Clark and Leach left the garage in the car of Leach, pursuing a course through the business district of Stockton until they reached a residential section of the city, where, in attempting to negotiate a turn at a high rate of speed, the car struck a pole, instantly killing Clark and Coleman.

The first point urged by appellant for reversal is that the evidence is legally insufficient to support the finding of guilt. It is admitted by appellant at the time of the accident the car was being operated by someone in a manner that would support a conviction of manslaughter, but claims there is no proof sufficient to support the finding that Leach was driving at the time of the accident. In view of the verdict by the jury we are concerned merely with the evidence which would tend to support and justify that conclusion. Starting with the time the death car left the hotel garage on the morning in question with Leach, Coleman and Clark as occupants, we have the testimony of Carl Barstow, the floor man in the garage, who testified the three

men were all in the front seat of the Rockne sedan at the time the car left the garage, and Leach was driving. D. H. O'Malley, an employee of the same garage, testified he saw the three men in the car and heard the motor start; Leach was behind the steering-wheel, but from the position of the witness he could not actually see the car as it drove out of the garage. Herbert G. Ayers, a personal acquaintance of defendant, testified he saw defendant driving an automobile with two others in the front seat, and within three or four minutes thereafter heard a crash and upon going to the scene of the accident saw the defendant with his two companions lying upon the street. Reverend William Jensen, while not personally acquainted with the defendant, testified to seeing a car pass at about the time in question and identified defendant as the driver of the car. Also a group of boys awaiting transportation to a golf course saw the car and identified defendant as the driver thereof. Other witnesses saw the car in its progress through the streets traveling at a high rate of speed, connecting the various points of observation named by the witnesses. We believe this is a sufficient summarization of the testimony on the question of identification of the driver and this testimony, if accepted and believed by the jury, as evidently it was, was entirely sufficient to establish the particular fact in issue.

It is also strongly contended that the physical facts adduced at the trial as to the damage to the car and the injuries received by the occupants preclude the possibility of defendant having been in the driver's seat at the time of the impact, but that also is a question of fact. The car apparently careened and turned over more than once, so the position of the bodies when finally the car came to rest and the location of the injuries sustained cannot be conclusive of the position of the occupants just prior to the accident. It is true that where it is physically or inherently impossible for testimony to be true, there is then no conflict for a jury to decide, but here there is no inherent impossibility in the defendant having been in the driver's seat just before the accident, nor is it incompatible with the physical facts that he might have been in the driver's seat just prior to the accident and yet have escaped a fatal injury. That also is purely a question of fact for the jury to determine.

■ Defendant next complains very vigorously of what he contends is a gross abuse of discretion in allowing the prosecution to reopen its case after the defendant had rested. In its case in chief the prosecution called some seventeen witnesses who testified as to the identity of the driver, the course and speed of the car, the question of intoxication and other matters essential to the establishment of a cause of action. Thereupon the defendant called its witnesses, some testifying the defendant was not the driver of the car, others as to the occupants of the car and their seating arrangement. After defendant rested, the prosecution called a witness in rebuttal and asked him as to the identity of the driver of the automobile at a given time and place. To this line of testimony defendant objected on the ground that it was not proper rebuttal. After extended argument the trial court properly held that the proposed line of testimony was not rebuttal, but was part of the People's case in chief, and permitted the case to be reopened for the purpose of introducing further testimony upon behalf of the People. Thereupon the prosecution called a number of witnesses, all of whom testified as to the identity of the driver of the car. Appellant, by appropriate motion and objection, protected himself against the ruling of the court and now insists that not only was the court in error in permitting the case to be reopened, but it was an abuse of discretion so to do. We believe, however, that no abuse of discretion was shown nor can we say as a matter of law that the district attorney acted unfairly in the premises. If we believed the belated witnesses were withheld deliberately it would be our duty to promptly declare a new trial; but we cannot find in the record that to have been the fact, and particularly so after the trial court permitted, in the interest of justice, the case to be reopened.

■ Defendant also contends that the district attorney was guilty of prejudicial misconduct in that he repeatedly referred to the truthfulness and veracity of the witnesses for the People and, on the contrary, accused the witnesses for the defense of misstating the facts and that he testified to facts within his knowledge while not under oath and attempted to get before the jury the fact that defendant was a reckless driver and had in the past frequently indulged in the excessive use of intoxicating liquor. We

have carefully examined the record and particularly as to those portions thereof cited by appellant in support of his contention, but find nothing therein to justify a reversal upon these grounds. It is true that the district attorney, when challenged by the defense to produce a certain witness, stated he did not do so because he would not call a witness he thought was lying. This remark was stricken out by the court. In another instance the district attorney in his closing address to the jury stated a certain witness called by the prosecution had no reason to tell anything but the truth, that he was absolutely honest and his integrity had not been questioned. In referring to the testimony of the defendant the district attorney in closing commented upon the weakness and improbability of the version of the accident as given by the defendant and said that he did not believe it and that the defendant was lying. He then dwelt upon the truthfulness of the witnesses called by the prosecution and asked that full credit be given their version of the accident. Frequently, however, the district attorney told the jury in effect that it was for them to weigh the testimony. We find no prejudicial misconduct in the remarks of the district attorney nor do we find any exception taken thereto by the defense at the time the statements were made to which objection is now urged. It was the duty of the defendant if he felt the district attorney was exceeding his proper role to assign such error at the time of its commission so the court could, if proper, admonish the jury. That apparently was not done.

As to the claim the district attorney testified to certain facts, he not being sworn as a witness, it appears the remarks were made in the course of argument addressed to the court or in colloquies between counsel, and the court frequently took occasion to admonish the jury that the statements of counsel did not constitute evidence in the case and should not be so considered by them. To the attempt of the district attorney to tell of past events or instances of the use of intoxicating liquor by the defendant, objections were made by the defense, which objections were sustained. We can see no misconduct on the part of the district attorney nor any prejudicial error in the asking of the questions noted, particularly as the objections made by counsel were sustained and the errors cured by admonition.

■ Defense also cites as error the refusal of the court to give certain instructions on circumstantial evidence. It would add nothing to quote these proffered instructions, we merely contenting ourselves by saying that the points seem to have been fully covered in instructions that were given, and those refused are open to the objection of being somewhat vague and argumentative and going beyond the rule as laid down in section 1096 of the Penal Code.

■ Complaint is also made that the court refused to instruct the jury that their verdict must not be influenced by any feeling of sympathy toward the survivors of the deceased passengers. We must assume jurors selected to try the issues of a cause need not be instructed upon every contingency, remote or speculative, that might arise. As men and women of ordinary intelligence we must concede them a sufficient understanding of the responsibilities of their office to resist any influence of sympathy and decide the issue upon the facts. If they were not so inclined to separate their sympathy and their sense of justice, a mere admonition by the court would not correct that fundamental defect.

The other specifications of error in reference to certain instructions would seem to be answered and covered by the instructions given by the court. After a careful consideration of the entire cause, we believe the errors noted by appellant did not result in a miscarriage of justice, and the judgment and the order should be and are affirmed.

Plummer, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 25, 1934.