[Crim. No. 2524.   First Dist., Div. Two.   Nov. 30, 1948.]

THE PEOPLE, Respondent, v. DANIEL McCARTHY, Appellant.

Nathan C. Coghlan for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

GOODELL, J.—Appellant was accused by an information in three counts of the violation of subdivisions 2, 4 and 6 of section 337a of the Penal Code. He was convicted on each count after a trial by jury. His appeal is from an order denying a new trial.

Subdivision 2 makes it an offense to keep or occupy a place, with books, papers or paraphernalia for the purpose of recording or registering bets or wagers on certain contests including those of speed between beasts; subdivision 4 makes it an offense to record or register such bets or wagers, and subdivision 6 makes it an offense to accept such bets or wagers.

The place in question is number 11 Commercial Street in San Francisco. A cigar store faces the street and in its rear there is a room behind which is a sort of storeroom. On Saturday afternoon, March 29, 1947, between 1:30 and 2 o'clock, two San Francisco police officers dressed in plain clothes visited the place in line of duty and appellant's arrest followed. Officer Loyd Duggins entered first, with the purpose of finding out if he could place a bet on a horse race being run that afternoon at Tanforan and, if so, of placing it. Appellant sat behind a small table in the space to the side of the cigar counter, behind a folding door which screened him from view from the street, and three or four other men were gathered there. Officer Duggins testified that these men stood in line in front of the table; that he could not hear the conversation between the first man and appellant but saw money handed appellant by the men and saw appellant write something on a piece of paper; that as the line moved forward the man just ahead of him said "423" and "two something," and appellant wrote "423" on a piece of paper and the man handed appellant three $2.00 bills and stepped away; that he (Duggins) then moved up and said to appellant "one and one on 505" and appellant wrote on a piece of paper "505 1 W 1 P," inquiring "What are your initials?" to which the officer replied "L. D.," which appellant then wrote on the paper and asked "Were you here yesterday?" to which he answered "Yes." The officer testified "So he wrote another piece of paper just like the first one he had written, and he handed me the second piece of paper he had written, and I put it in my pocket and put the two one-dollar bills on the table. He took the two one dollar bills in his hand." The officer then showed his badge saying "This is a pinch; sit still"; appellant uttered an exclamation and waved his hands in the air, whereupon the visitors hastily departed.

Officer Dougherty had waited outside where he could see the front of the place. When he saw the three or four men come out and run, as he testified, toward the Embarcadero, he entered and found appellant in a very nervous state. The officers ordered him to empty his pockets and he laid on the table $25 in currency, including the two $1.00 bills which officer Duggins had put down (their serial numbers having been noted beforehand), three $2.00 bills, 17 $1.00 bills and a few personal articles. The officers then ordered appellant to strip, which he did, but nothing further was found on his person. They then made a careful search of the premises but found nothing connected or apparently connected with horse racing or betting save two California Turf Digests dated March 29, and a stack of about 300 blank pieces of paper cut into rough rectangles measuring about 3 inches by 4 inches and a sheet with numbers written thereon in ink. The slip of paper on which "505 1 W 1 P L D" was written had been taken from the stack of blanks and was of the same approximate size and appearance as the blanks.

The uncontradicted testimony shows that the Digests are not illegal and can be bought in newsstands and cigar stands around town. A card in evidence advertised them for sale there for 25 cents. The two issues of the Digest show entries and other information for eight races that day at each of three race tracks, namely, Oaklawn Park, Gulfstream Park and Tanforan. Printed therein opposite the name "Overstride" in the sixth race at Tanforan is the number "505," and opposite "Ootem" in the second race is the number "423." The testimony shows that the practice is to place bets by numbers, not by the name of the horse, and that "505 1 W 1 P L. D." means that "L. D." had bet $1.00 on "Overstride" to win the race and $1.00 to come in in second place.

The small piece of paper seized by the officers has ink figures written thereon in three columns of eight lines each. The function of such sheets, according to the testimony of Officer Dougherty (who testified he had handled over 100 bookmaking cases) is to guide those concerned so that bets will not be accepted after a race has started, the lines scratched indicating races already run. The three columns showed the hours when the horses went to the posts for that day's races at three tracks. The defense offered no explanation of this sheet or its meaning.

Appellant denied that he had accepted any bet or wager. He accounted for $10 of the $25 by testifying that the three

$2.00 bills and four $1.00 bills had been given him that afternoon by one of the visitors in repayment of a loan of $10. This was corroborated by the visitor's testimony that his presence there was for that purpose and that he had never placed any bet on that or any other occasion or had seen any placed; that when he heard Officer Duggins identify himself he thought it was time to leave, and left unhurriedly. He stated further that whenever he bet on the horses he did so at "a legal place."

Another visitor on that occasion testified that he was a tobacco salesman engaged on one of his periodical calls and that he placed no bet, and saw none placed. He, too, moved out when Officer Duggins asserted his authority.

There is in evidence a card with "Harbor Social Club— McCarthy's Cigar Store 11 Commercial St. San Francisco" printed thereon, and lines for the writing in of a name.

The foregoing is the substance of the material testimony in the case. There was considerable testimony respecting the arrangement or lay-out of the place; the angles at which two folding doors were set; the fact that there was a large mail slot in a door behind the chair where appellant sat, and that there were two pin-ball machines in the place.

Appellant makes no claim of insufficiency of the evidence to support the verdict, but contends that prejudicial error was committed by the court in permitting his cross-examination outside and beyond his direct examination and in admitting certain rebuttal testimony in impeachment of the testimony elicited on such cross-examination.

Section 1323 of the Penal Code provides that "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief . . ."

Numerous cases hold that section 1323 means exactly what it says as to the limitations on the cross-examination *of a defendant on trial.* Among them are *People* v. *Bishop,* 81 Cal. 113 [22 P. 477]; *People* v. *Wong Ah Leong,* 99 Cal. 440 [34 P. 105]; *People* v. *Crowley,* 100 Cal. 478 [35 P. 84]; *People* v. *Baird,* 104 Cal. 462 [38 P. 310]; *People* v. *Bishop,* 134 Cal. 682 [66 P. 976]; *People* v. *Frank,* 75 Cal.App. 74 [241 P. 924]; *People* v. *Gilliland,* 39 Cal.App.2d 250 [103 P.2d 179], and *People* v. *Darby,* 64 Cal.App.2d 25 [148 P.2d 28].

One of the leading cases is *People* v. *Arrighini,* 122 Cal. 121, 126 [54 P. 591], where the court says that the limitation in

section 1323 "was doubtless intended to preserve to defendants the right secured by section 13, article 1, of the constitution"; which is that ". . . No person shall be . . . compelled, in any criminal case, to be a witness against himself . . ." *People* v. *O'Brien,* 66 Cal. 602, 603 [6 P. 695] is to the same effect.

The difference between the testimony of a defendant and that of other witnesses is discussed in several cases (see *People* v. *O'Brien,* 96 Cal. 171, 180 [31 P. 45] and cases cited). *People* v. *Gallagher,* 100 Cal. 466, 475 [35 P. 80], holds that the effect of the last clause of section 1323 "is to take from the court *any* discretion which it might ordinarily exercise in allowing the range of a cross-examination to extend beyond the matter brought out upon the direct examination. (See *People* v. *Rozelle,* 78 Cal. 84 [20 P. 36].) And to prevent the prosecution from questioning the defendant upon the case generally, and *in effect making him its own witness.* (*People* v. *O'Brien,* 66 Cal. 602 [6 P. 695].) (Emphasis added.)

On direct examination counsel was careful to limit appellant's testimony to a description of the premises, an explanation of the presence of the three visitors, a denial that any bet had been made by them or by Officer Duggins, or that any betting marker or other paper had been given him. He testified to having been stripped, and admitted selling the Digests. That was all.

On cross-examination the prosecutor went beyond this by asking: "Isn't it a fact, Mr. McCarthy, that during the month of March, 1946, Officer Dougherty came into these premises, called you behind the counter; that on that occasion you had rundown sheets on which the winning horses had been circled, and isn't it also a fact that at that time you had approximately fifty betting markers in your possession?" A timely objection that it was not proper cross-examination was overruled. The answer was "I don't think that is true."

On recross-examination the following appears over objection: "Q. What was found in your possession during the month of March, 1946, at 11 Commercial Street? . . . A. I think they took some scratch sheets down from off the wall hanging up . . . Q. Hanging up on the wall? A. Out in front of the store by the cash register, for sale. Q. What else did they find? . . . A. I don't know; they may have taken some note paper out of the showcase or something . . . Q. Did the note paper have writing on it similar to what has been

described here as a betting marker? . . . A. I don't remember . . . It is two years ago.''

Officer Dougherty was then called in rebuttal and over objection testified that in March, 1946, he visited the same premises and found a marked ''rundown sheet'' and approximately 50 betting markers; that the rundown sheet had the winning horse circled and the figure ''2'' and ''3'' after the horses that ran second and third; that betting markers were the same type of paper as the stack of evidence, but a little larger. On cross-examination he testified that the markers and rundown sheets had been introduced in evidence in the municipal court and he admitted that the case there had been dismissed.

No attempt was made by the prosecution to prove the events of March, 1946, in its case in chief. Whether such events of a year before could have been proved in chief under the heading of similar offenses, or as tending to show intent, plan or design, is not before us and need not be decided. The point which appellant presses is that by his cross-examination he was compelled to be a witness for the State and against himself (see cases *supra*) and that his own testimony was then used as the foundation for the impeaching testimony employed against him.

The impeaching testimony, coming as it did at the end of the case after the defense had rested, put appellant at a decided disadvantage (see discussion in *People* v. *Rodriguez,* 58 Cal.App.2d 415, 418-419 [136 P.2d 626] ; *People* v. *Schmitz,* 7 Cal.App. 330, 360-361 [94 P. 407, 15 L.R.A.N.S. 717]).

Both the cross-examination and the impeaching testimony dealt with events of a year before this arrest, events insufficient in themselves for appellant's conviction in that case, but resurrected and used as a make-weight to aid in his conviction in this one.

If the cross-examination had sought to bring out the commission of a felony it would have been clearly admissible under section 2051, Code of Civil Procedure, but as it was designed to bring out only ''particular wrongful acts,'' or at least questionable ones, it was just as clearly *in*admissible by the very terms of the same section. (See *People* v. *O'Brien,* 96 Cal. 171, 180, *supra*; *People* v. *Arrighini,* 122 Cal. 121, 126, *supra*.)

In *People* v. *Burness,* 53 Cal.App.2d 214, 219-222 [127 P.2d 623], there is an extended discussion of ''error in receiving irrelevant evidence with prejudicial implications.''

The opinion cites several authorities on the point that "A witness may not be impeached on an immaterial or collateral matter" and holds that "It is not competent for the prosecutor to introduce irrelevant evidence falling short of crime and designed merely to degrade and prejudice the defendant in the minds of the jury (8 Cal.Jur. 59; *People* v. *Nelson* (1928) 90 Cal.App. 27, 34 [265 P. 366].)" Cases on the point that a witness cannot be impeached on an immaterial or collateral matter need not be multiplied, since it is well settled. It is sufficient to cite *People* v. *Rodriquez,* 134 Cal. 140 [66 P. 174], where the cross-examination of the defendant was allowed to go beyond his direct examination, in violation of section 1323, whereupon, on rebuttal, it was contradicted. In reversing the judgment for this error the court said: "There was evidence properly admitted, which tended to show appellant's guilt; but we cannot know whether or not the jury would have convicted him without evidence which was improperly admitted . . . " (meaning the impeachment already discussed). The court held that such testimony tended to discredit that of the defendant and moreover "to prove the commission of another and independent crime, which, of course, was entirely unwarranted."

Respondent relies on *People* v. *Greco,* 47 Cal.App.2d 628 [118 P.2d 886] where the prosecution was under subdivisions 1 and 2 of section 337a, the date of the offense being March 20, 1941. On cross-examination one of the defendants was asked if he had not been arrested in August, 1940 *seven months before,* and had admitted taking bets in the same location. *"The court sustained an objection to this question by the defense and remarked, 'we are trying the defendants on this charge here.'"* (Emphasis added.) That ruling alone shows that the case is not in point. What the court said thereafter is nothing but a dictum and is purely hypothetical in view of the ruling.

*People* v. *Schwartz,* 14 Cal.App. 9 [110 P. 969], cited by respondent is easily distinguishable, for there the other bets were taken by the defendant at the same baseball game, but in other innings, and as the court says "at about the same time." Moreover the proof of them was apparently made as part of the People's own case, and the opinion shows no objection was interposed.

The officers made a careful and an immediate search of the person of appellant and of the premises but found no duplicate betting markers whatever. Officer Duggins testified

that he saw the duplicate of his ''505'' slip made out and that appellant, with it in hand, ''made a motion towards the seat.'' ''He leaned forward until he was up against the table which he was sitting behind, and then put his arm down, then straightened up.'' Notwithstanding the arrest and search followed instantly, neither the ''505'' nor the ''423'' nor any other duplicate marker was found and it was so stipulated. Appellant's denial that he accepted any bets from the officer or anyone else, the testimony of the three visitors that they made none and saw none made, and the failure to find any duplicate markers, are aligned on the defense side, opposed to the testimony of the two officers, particularly that of Officer Duggins.

With such conflict in the record an affirmance is not justified under section 4½ of article VI of the Constitution, for, as was said in *People* v. *Burness, supra,* 53 Cal.App.2d 214, 222, ''While the evidence is legally sufficient to support the judgment, we are unable to conclude that defendant would have been convicted had the error not occurred . . . [citations].'' See, also, *People* v. *Westcott,* 86 Cal.App. 298, 320 [260 P. 901] and cases cited. In *People* v. *Dail,* 22 Cal.2d 642, 650 [140 P.2d 828], the court said ''that in a close case where the evidence is sharply conflicting, substantial and serious errors vital to defendant that may have resulted in a miscarriage of justice must be regarded as prejudicial and grounds for reversal. (*People* v. *Silver,* 16 Cal.2d 714, 723 [108 P.2d 4].)'' Both the Silver and Dail cases are followed in *People* v. *Cornett,* 33 Cal.2d ——, —— [198 P.2d 877]. See, also, *People* v. *Kane,* 27 Cal.2d 693, 702 [166 P.2d 285], and *People* v. *Hamilton,* 33 Cal.2d ——, —— [198 P.2d 873].

The order appealed from is reversed and the cause remanded for a new trial.

Nourse, P. J., and Dooling, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 27, 1948. Shenk, J., and Carter, J., voted for a hearing.