[Crim. No. 838. Fourth Dist. May 5, 1952.]

THE PEOPLE, Respondent, v. BURGESS G. CONLEY, Appellant.

John T. Fuller, Don G. Christenson and A. P. G. Steffes for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with an assault by means likely to produce great bodily injury upon one Higgins. A jury found him guilty, and his motion for a new trial was denied. Imposition of sentence was suspended for three years and he was given probation with the condition that he serve six months in the "custody" of the sheriff. He has appealed from the "judgment of conviction" and from the order denying his motion for a new trial.

The defendant was the proprietor of a "cafe" in Porterville which had a bar along one side and a food counter on the other, the two being some 10 feet apart. There were swinging doors at the entrance, portions of which were made of clear glass, and a short incline from the doors to the sidewalk. A parking meter stood directly across the sidewalk from the doors.

The incident here involved occurred shortly before midnight on March 17, 1951. There were a number of people seated at the bar including two women, and a number of people seated at the food counter, including one Burkhart and his 12-year-old daughter. The defendant got into an argument with one McIntyre, who had formerly worked for him, which started when McIntyre called him a "slave driver."

The defendant became abusive, talked loud, used profane and obscene language, and challenged McIntyre to go to the alley and fight. Higgins, who had been seated near the front end of the bar, went to the rear end of the bar and placed one hand on the defendant's shoulder and the other on McIntyre's shoulder, saying "Come on fellows let's be friends." The defendant turned around and told him to get back. Higgins stepped back with a surprised look, and asked the defendant if he wanted a nickel. The bartender came and took hold of Higgins' right arm and started to lead him out. Higgins went along without resisting. The defendant left his stool, went to Higgins' left side and grabbing him by the back of the neck and by the belt started to take him briskly toward the front doors. When they got to the doors the bartender let go of Higgins and opened the right-hand door. The defendant pushed the left door open with his shoulder, proceeded through the door, and then pushed or shoved Higgins with such force that he struck his head against the parking meter and fell to the sidewalk. The defendant reentered the café and made a remark to the effect that the meter was good for something besides putting money in it; that it was good for knocking a man's brains out. He also asked everybody in general, and McIntyre in particular, if they wanted any of the same thing.

Higgins received rather serious injuries as a result of which he spent about 20 days in a hospital. The doctor testified that his injuries could have been caused by stumbling into the meter "if the man had enough propulsion from behind him." When police officers arrived at the café a few minutes later and asked the defendant what had happened, he replied: "Nothing happened." When asked why he had not called the police if someone was bothering him he said it was not his fault that the meter got in the way. He also complained that the officers had not come when called on a previous occasion, and became quite abusive toward them.

The defendant took the stand and told the same general story about this occurrence, although he gave a different version of some of the details. He said he had had three drinks of whiskey to which some crème de menthe had been added, but that he was not drunk. He admitted that he was angry and that he had used obscene language in his argument with McIntyre. He said that when Higgins interrupted his argument he asked him several times to leave the building but Higgins continued to "paw" him; that Higgins said

something, he didn't know what; that he took him by the collar and the belt and escorted him to the front door; that he gave Higgins a shove and turned around and walked back; that "I probably shoved him harder than I realized"; that he did not think of the parking meter in front of the café; that the bartender came and took Higgins' right arm as he was ushering him out; that neither he nor the bartender went through the doorway; that as soon as he released Higgins he turned and walked toward the rear of the café; and that he did not then know that Higgins had been hurt. He denied that he had invited McIntyre out to fight, saying he had invited him out to wrestle. He denied asking if anyone else wanted some of the same thing, or that he had made any statement about a parking meter being good for something besides putting money in. He produced a number of witnesses who corroborated his story, most of them being his employees and the wife of an employee. They rather overdid this, however, as they all denied seeing or hearing obvious things which the defendant himself admitted had occurred.

Three witnesses were called in rebuttal. One Bullard, a customer, testified that the bartender took hold of Higgins and was leading him toward the door "when the defendant got up and got hold of him and helped him toward the door"; that he turned around and did not see them arrive at the door; and that the defendant came back in a minute or so and remarked "Maybe you would like a little of the same stuff, too." Burkhart testified that Higgins just put a hand on the shoulder of the two men and that there was no stroking or "pawing"; that the bartender was leading Higgins out when the defendant "come along and grabbed him and finished the job"; that Higgins made no resistance and the defendant took him out "with great speed and ran his head into that meter"; that the defendant was out on the sidewalk for about 15 seconds; that when he came back into the room he said he was going to call somebody at the city hall and tell him that the "meter was good for something besides putting money in, that it was good for knocking a man's brains out"; that the defendant then asked whether anybody wanted any of it; and that after the defendant came back in he could see through part of the door and saw Higgins "laying out there crossways on the walk." A Mrs. Maxon, who lived in an apartment across the street, testified that she was looking through her window; that she saw three

men come rushing through the door; that the bartender turned around and went back; that the defendant walked to about the middle of the sidewalk; that he had his hand on the back of Higgins' neck "and he give him an awful shove"; that the defendant stood on the sidewalk until after Higgins struck the meter and slipped to the sidewalk; and that he then turned and walked back into the café.

Appellant's main contention is that the court abused its discretion in permitting the prosecution to introduce testimony in the guise of rebuttal which was properly a part of the People's case in chief. When the People rested defense counsel expressed surprise that Mr. Burkhart had not been called. The deputy district attorney stated that he would be a rebuttal witness. Out of the presence of the jury defense counsel stated that he would object to this procedure, that Burkhart had been a witness before the grand jury, that his testimony would be corroborative of the testimony of his daughter who had already testified, and that it would be prejudicial error to hold this witness or any other witnesses back for rebuttal. At the conclusion of the defense's case the defendant moved to exclude the testimony of Burkhart. This motion was denied and he was allowed to testify. It is now argued that this was prejudicial error, citing *People* v. *Schmitz*, 7 Cal.App. 330 [94 P. 407, 419, 15 L.R.A.N.S. 717]; *People* v. *Rodriguez*, 58 Cal.App.2d 415 [136 P.2d 626]; *People* v. *Leach*, 137 Cal.App. 753 [31 P.2d 449]; *People* v. *Avery*, 35 Cal.2d 487 [218 P.2d 527]; *People* v. *McCarthy*, 88 Cal.App.2d 883 [200 P.2d 69]. The practice of holding back witnesses for rebuttal when the testimony is more properly a part of the People's case in chief is disapproved in these cases, and some of them suggest that under some circumstances this might constitute prejudicial error. We find nothing in those cases which would justify or compel a reversal under the facts in this case. A large part of Burkhart's testimony was a denial of new matter which had been brought out by the appellant, and was properly rebuttal. While other portions of his testimony were along the same lines as that of his daughter who had previously testified and could properly have been presented on the case in chief, it was a part of the background showing that the witness was in a position to see the things to which he testified and it is difficult to see how any particular prejudice resulted because it was brought in at one time rather than at another. Moreover, this witness had suffered a prior

conviction of a felony, which fact the defense brought out for the purpose of impeaching him. Knowing that he would be thus impeached, the prosecution might well prefer not to use him on its main case. A good reason appears for using the testimony of Mrs. Maxon in rebuttal. The appellant had admitted before the grand jury, possibly by inadvertence, that he went through the doors on this occasion and it would not have been necessary to use Mrs. Maxon if he had not insisted at the trial that he did not go through these doors. Her testimony was proper rebuttal. No argument is made with respect to the other rebuttal witness, Mr. Bullard. Under the facts here appearing, it cannot be held that reversible error appears in this connection.

 It is next contended that the court erred in restricting the cross-examination of Mrs. Maxon. The defense counsel started to ask whether she had ever talked with her husband about his going over and telling the bartender something. An objection was made before the question was completed and, out of the presence of the jury, the appellant offered to prove that her husband had told the bartender that he knew all about the case, and that if the appellant would come to see him he might forget what he knew. The district attorney objected to the offer of proof, suggesting that the bartender and the husband were the proper persons to testify in that regard. The court sustained the objection to the question and to the offer of proof. Defense counsel stated that he did not want to call Mr. Maxon because he did not want to be bound by his testimony. When he later called the bartender and asked him what Mr. Maxon had done an objection was sustained. After some discussion the court reversed his ruling and told the defense counsel he would permit him to have the witness testify about Mr. Maxon. Defense counsel dropped the matter and asked no further question in that regard. Opportunity was given to bring out such evidence if any existed, and no reversible error appears.

 It is next contended that the court erred in giving three instructions. The first stated the usual rule as to the kind and degree of force which a person may lawfully use in self-defense, and that any use of force beyond that is regarded by the law as excessive. The second was the usual instruction that the intent with which an act is done is manifested by the surrounding circumstances and the sound mind of the accused, and that it must be presumed that the defendant

was sane at the time in question. The third was the usual instruction to the effect that no act is less criminal because it was committed by a person while in a state of voluntary intoxication. It is argued that these instructions were improper since no such defenses were raised. The appellant relies on *People* v. *Silver,* 16 Cal.2d 714 [108 P.2d 4], where it was held that in a close case a misleading instruction on an issue not raised is prejudicial where it may have confused the jury on a matter vital to the defense. No such situation here appears. These matters were not vital to the defense and there is nothing to indicate that the jury was confused or misled. There was some basis for the instruction on self-defense, since the appellant testified that Higgins continued to ''paw'' him, and the jury might otherwise have concluded that he was justified in using any amount of force to prevent this physical contact. The instruction on insanity was merely a general instruction on the matter of intent, and was neither erroneous nor prejudicial. While the appellant testified that he was not drunk, there was evidence to support a contrary inference, and the instruction on intoxication was neither erroneous nor harmful.

It is next contended that the court erred in instructing the jury ''that the prosecution need not prove that the defendant intended to severely injure the complaining witness.'' The appellant had testified that he did not intend to hurt Higgins when he shoved him out the front door. This instruction had a proper relation to the evidence, and it was a correct statement of the law.

It is next contended that the evidence was insufficient to sustain a conviction since it conclusively appears that Higgins' injury resulted from an unusual accident, and that appellant's conduct amounted to nothing more than a simple assault or battery. This contention is without merit. The evidence for the prosecution showed a vicious attack, with unnecessary force, and without any reasonable provocation. The evidence for the appellant disclosed an attack with a degree of force entirely uncalled for, and with no provocation worthy of the name. The evidence was sufficient to sustain the implied finding that the force used was one which was likely to produce great bodily injury.

The appellant's final contention, that the court erred in denying a motion for a new trial, is based upon the contentions already considered and may not be sustained.

The purported appeal from the judgment is dismissed, and the order denying a new trial is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied May 14, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 29, 1952.