[No. B171492. Second Dist., Div. Seven. May 23, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD RUSSELL, Defendant and Appellant.

**COUNSEL**

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and David Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—" '[W]hether the pitcher hits the stone or the stone hits the pitcher, it will be bad for the pitcher.' Miguel de Cervantes, *Don Quixote*, Part II, ch 43 (1615)."[1]

In this case of first impression, we conclude a defendant who intentionally pushes another person into the path of an oncoming vehicle has used that vehicle as a "deadly weapon" in violation of Penal Code section 245, subdivision (a)(1).

The jury convicted appellant Donald Russell of assault with a deadly weapon or by means of force likely to cause great bodily injury.[2] Appellant raises three main arguments on appeal: First, there was insufficient evidence to establish a violation of Penal Code section 245, subdivision (a)(1) under the theory appellant committed an assault with a deadly weapon when appellant pushed the victim into the path of an oncoming vehicle. Second, there was insufficient evidence to establish a violation of Penal Code section

---

[1] Quoted in *State v. Reed* (1990) 101 Or.App. 277, 280 [790 P.2d 551]. See page 785, *post.*

[2] Penal Code section 245, subdivision (a)(1).

245, subdivision (a)(1) under the theory appellant's act of pushing the victim into the street where the victim was struck by an oncoming vehicle was an act "likely" to cause great bodily injury. Finally, appellant argues reversal is required because the jury was given a combined instruction on both prosecution theories and the jury did not specify the theory on which it found appellant guilty of violating Penal Code section 245, subdivision (a)(1). We find sufficient evidence to support either theory and thus affirm.

## FACTS AND PROCEEDINGS BELOW

On Sunday, December 8, 2002, between the hours of 4:00 p.m. and 5:00 p.m., Cirillo Rodriguez Abtia[3] walked from his apartment to a nearby 7-Eleven store, located near the intersection of Reseda and Vanowen, to purchase a money order to pay his rent. After making his purchase at the 7-Eleven, Abtia began to walk back toward his apartment. As Abtia approached a bus stop near the intersection of Reseda and Vanowen, appellant began to walk closely behind Abtia. After following Abtia for a short distance, appellant asked Abtia for money. Abtia denied appellant's request and continued walking. As Abtia stepped off the curb to get around a bus bench, appellant pushed Abtia, in his side or back, into the street where he was hit by an oncoming car driven by Vernice Francis.

Vernice Francis was driving eastbound on Vanowen at approximately 4:05 p.m. on December 8, 2002. After stopping at a traffic light at the corner of Reseda and Vanowen, Francis began to accelerate down Vanowen, traveling eastward in the lane closest to the curb. There was at least one other car in the immediate vicinity as she drove down Vanowen. As Francis approached the bus stop near the 7-Eleven on Vanowen, she saw appellant. She described him as a "vagrant [with] a big poncho on [and with a] big head of hair" walking behind another man she later identified as Abtia.

Francis described both men as walking on the south side of the street in an eastwardly direction, slightly ahead of her car, and with their backs toward her. As Francis approached the bus stop she saw Abtia take a step into the street to pass by a bus bench. Just as Abtia stepped into the street, Francis saw appellant push Abtia into the path of her car. Francis swerved and slammed on her brakes to avoid running over Abtia. But before Francis's car came to a stop, Abtia's body struck the car's windshield, rolled off the hood and onto the ground. Francis's car did not run over Abtia and he managed to stagger to his feet and walk home in an apparent daze, but with no disabling injuries. Meanwhile appellant walked away from the incident but stayed in the area near the 7-Eleven.

---

[3] Mr. Abtia is referred to as "Rodriguez" in the reporter's transcript.

At approximately 4:15 p.m., the first responding officer, Eric Obrecht, arrived at the scene. When he arrived Francis was waiting by her car but the victim, Abtia, was not at the scene. Francis identified appellant, who was standing in the 7-Eleven parking lot "blessing everybody," as the man she saw follow and push Abtia into the street. Officer Obrecht detained appellant and waited for another patrol unit.

At trial, Officer Obrecht testified he waited with appellant at the scene for about 20 minutes until the other patrol unit arrived. During this waiting period, Obrecht explained appellant's demeanor was "unusual." His emotional state would go "up and down." He would be "very angry at one moment. He'd be . . . seething, teeth gnashing, angr[y], and a few moments later he'd be melancholy." According to Obrecht, appellant's mood went from "angry to melancholy to happy in . . . a short period of time."

At approximately 4:30 p.m., a young man approached the officers, explaining he believed his father was just hit by a car. The son agreed to bring his father back to the scene to discuss the incident with the officers. When Abtia arrived with his son, Francis identified Abtia as the man she saw appellant push into her car. Since Abtia did not see the person who pushed him, he could not positively identify appellant to the officers as the man who pushed him, although he believed appellant was the man who had asked him for money.[4] Appellant was arrested for assault. At trial, it was stipulated appellant had $15.01 in his possession at the time of his arrest.

Appellant was charged with assault with a deadly weapon or assault with force likely to cause great bodily injury, in violation of Penal Code section 245, subdivision (a)(1). The jury convicted appellant for assault with a deadly weapon or by means of force likely to cause great bodily injury, in violation of Penal Code section 245, subdivision (a)(1), without specifying the basis on which it found appellant guilty.

The trial court found appellant to have suffered a prior conviction of a serious or violent felony or juvenile adjudication (§§ 1170.12, subds. (a)–(d) and 667, subds. (b)–(i)), a prior conviction of a serious felony (§ 667, subd. (a)(1)) and three prior felony convictions (§ 1203, subd. (e)(4)). The court sentenced appellant to the mid-term of three years on the offense, which was doubled under the "Three Strikes" law.[5] The court imposed an additional five years for a prior prison term enhancement under Penal Code section

---

[4] At trial, Abtia testified he did not know if appellant was the man who pushed him because he did not see who had pushed him.

[5] Penal Code sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d).

667.5, subdivision (b). Thus, appellant received a total sentence of 11 years in prison.

## DISCUSSION

Appellant contends there is insufficient evidence to find he committed aggravated assault with a deadly weapon or by force likely to cause great bodily injury. Under the prosecution's first theory of assault with a deadly weapon, the evidence is insufficient to sustain a conviction because appellant did not "use" the car as a weapon. Under the prosecution's second theory of assault with force likely to cause great bodily injury, appellant argues the evidence is insufficient to show the push was "likely" to cause the victim great bodily injury. Finally, appellant contends if the evidence is insufficient to support a conviction on one of these prosecution theories, his conviction must be reversed because the jury received a combined instruction and did not state the basis upon which it found appellant guilty.[6] Respondent in turn argues appellant's act of pushing the victim into the direct path of an oncoming car constitutes "use" of the vehicle as a deadly weapon within the meaning of Penal Code section 245, subdivision (a)(1), and there is substantial evidence to show appellant's act constituted force "likely" to cause great bodily injury.

I. *THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH A VIOLATION OF PENAL CODE SECTION 245, SUBDIVISION (a)(1) UNDER THE THEORY THAT APPELLANT COMMITTED AN ASSAULT WITH A DEADLY WEAPON, BECAUSE A PERSON WHO KNOWINGLY AND INTENTIONALLY PUSHES A VICTIM INTO THE PATH OF AN ONCOMING VEHICLE "USES" THE VEHICLE AS A DEADLY WEAPON WITHIN THE MEANING OF PENAL CODE SECTION 245, SUBDIVISION (a)(1).*

Appellant first contends he did not commit an assault with a deadly weapon within the meaning of Penal Code section 245, subdivision (a)(1) because he did not "use" the oncoming car as an instrument to inflict great bodily injury. He also argues the evidence was insufficient to prove he intended to push the victim into the path of that oncoming car.

A. *Pushing a Person into the Path of a Moving Automobile Constitutes the "Use" of a "Deadly Weapon" Within the Meaning of Section 245, Subdivision (a)(1).*

Penal Code section 245, subdivision (a)(1) punishes assaults committed "with a deadly weapon or instrument other than a firearm," or by "any

---

[6] *Martinez v. Garcia* (9th Cir. 2004) 379 F.3d 1034.

means of force likely to produce great bodily injury."[7] Whether or not the victim is injured is immaterial because the statute focuses on use of a deadly weapon or instrument or, alternatively, on force likely to produce great bodily injury.[8] A deadly weapon within the meaning of Penal Code section 245, subdivision (a)(1) is " 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' "[9]

Appellant argues appellant's act of pushing the victim into the street where the victim was struck by a car did not constitute an act in which the appellant "used" the car as a deadly weapon. Specifically, appellant argues he did not "use" the oncoming car as an instrument to cause great bodily injury to the victim because he did not have any control or operational use of the car at the time of the incident. We disagree. Although no California case has specifically held a person "uses" a vehicle as a deadly weapon when he intentionally places a victim in the path of a vehicle driven or operated by a third party, the case law from California and other states suggests such an act does constitute "use" of a vehicle as a deadly weapon.[10]

The law makes clear a person who operates or drives a vehicle in an attempt to injure another person has committed assault with a deadly weapon, to wit, the car.[11] Appellant would have us distinguish between the actions of one who, while driving or controlling a car, intentionally runs down a victim, and one who opportunistically utilizes, for the purpose of injuring a victim, the *force* of a moving car driven by an unwitting third party. We decline to make such a distinction.

Several jurisdictions have addressed the issue of whether a defendant can be charged for assault with a deadly weapon when the defendant did not

---

[7] "(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Pen. Code, § 245, subd. (a)(1).)

[8] *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028 [68 Cal.Rptr.2d 655, 945 P.2d 1204].

[9] *People v. Aguilar, supra,* 16 Cal.4th at pages 1028–1029, 1037.

[10] *Cabral v. L. A. County Metropolitan Transportation Authority* (1998) 66 Cal.App.4th 907, 914 [78 Cal.Rptr.2d 385] (Use of a vehicle "extends to *any* activity utilizing the vehicle" and includes opening a car door and exiting a parked vehicle, "[p]utting chains on a stopped vehicle, . . . parking, leaving the doors open, . . . failing to set the parking brake . . . [and] [l]oading and unloading a vehicle." [Italics added.]); *Harris v. Lammers* (2000) 84 Cal.App.4th 1072, 1077 [101 Cal.Rptr.2d 361] ("Use" extends to any activity utilizing the vehicle even though the plaintiff was neither driving nor operating the car at the time she was injured.); *People v. Wright* (2002) 100 Cal.App.4th 703, 706 [123 Cal.Rptr.2d 494] ("[A]ny operation of a vehicle by a person knowing facts that would lead a reasonable person to realize a battery will probably and directly result may be charged as an assault with a deadly weapon.").

[11] *People v. Wright, supra,* 100 Cal.App.4th at page 706.

possess or control the instrumentality at the time of the assault. Often this situation arises when a defendant intentionally strikes a part of the victim's body against a stationary object such as a wall or building fixture, or when an assailant adds to his human strength by utilizing the force of another object.[12] We find these cases helpful because they involve an assailant intentionally "taking advantage" of an object's intrinsic qualities in a way likely to cause the victim great bodily harm, but without taking possession or control of that object.

In *People of New York v. Cephas,*[13] a defendant, while leaning from a moving train, snatched the bag of a woman who was walking along a station platform. The woman's coat was ripped as the defendant pulled the bag from her grip.[14] The court specifically addressed the issue of "whether defendant can be said to have [used] the train at all since it was not under his control,"[15] and found the defendant had "used" the subway train as a dangerous instrument for purposes of first degree robbery.[16] The court reasoned an assailant, by " 'adding the strength of the train to the hand of the thief,' " commits a robbery with a dangerous or deadly instrument since he has " 'use[d] the force of the movement of the [subway] train' " to commit the assault.[17] Furthermore, in the context of an aggravated robbery statute, the court recognized "it would make no sense to distinguish between use of the *force* [of the train] and use of the *train*" as a dangerous instrument.[18]

In *People v. Pagan,* a case very factually similar to *Cephas*, another New York court upheld a conviction for first degree robbery.[19] In that case, the defendant also snatched the bag of a woman walking on the subway platform while the defendant leaned from a moving subway train. The victim was injured after being dragged several feet before letting go of her bag.[20] The court found the defendant had committed the robbery with a dangerous instrument, a subway train, "notwithstanding defendant's failure to 'possess' that instrumentality."[21]

---

[12] Annotation, Stationary Object or Attached Fixture as Deadly or Dangerous Weapon for Purposes of Statute Aggravating Offenses Such as Assault, Robbery or Homicide (1992–2004) 8 A.L.R.5th 775, sections 5, 10.

[13] *People v. Cephas* (1981) 110 Misc.2d 1075 [443 N.Y.S.2d 558].

[14] *People v. Cephas, supra,* 443 N.Y.S.2d at page 559.

[15] *People v. Cephas, supra,* 443 N.Y.S.2d at page 560.

[16] *People v. Cephas, supra,* 443 N.Y.S.2d at page 558.

[17] *People v. Cephas, supra,* 443 N.Y.S.2d at page 560.

[18] *People v. Cephas, supra,* 443 N.Y.S.2d at page 560, italics added.

[19] *People v. Pagan* (1990) 160 A.D.2d 284 [553 N.Y.S.2d 380].

[20] *People v. Pagan, supra,* 553 N.Y.S.2d 380.

[21] *People v. Pagan, supra,* 553 N.Y.S.2d 380, but compare to *Edwards v. U. S.* (D.C. 1990) 583 A.2d 661, discussed at page 785 below.

Stationary objects are also capable of being "used" as dangerous weapons within the meaning of an aggravated assault or robbery statute even if the assailant does not have physical control or possession of that object at the time of the incident. In yet another New York decision, *People v. Coe*,[22] the accused was convicted of first degree robbery for stealing a woman's purse after thrusting her head into a glass window. The prosecution argued the accused "used" the window as a dangerous instrument when he thrust the victim's head through it in an attempt to subdue her.[23] The appellate court agreed with this characterization of the window, finding "it was [not] improper to construe the plate glass window as being a dangerous instrument . . . ."[24] The court distinguished between a victim who accidentally or by her own volition slams her head into a glass window while trying to escape an assailant, and an assailant who forcibly thrusts the victim's head into a window, acknowledging that the former situation would not justify an assault with a deadly weapons charge.[25] By intentionally thrusting the victim's head through the window, the court explained, " 'It is the temporary use rather than the inherent vice of the object which brings it within the purview of the [robbery] statute.' "[26]

In line with the ruling in *Coe*, the New Mexico Supreme Court in *State v. Montano*[27] upheld a conviction in which the defendant was found to have used a brick wall as a deadly weapon by repeatedly beating his girlfriend's head against it. In that case, the defendant argued a brick wall could not constitute a deadly weapon because it is a nonmovable, nonwieldable object, which is part of its existing surroundings.[28] Rejecting the defendant's claim, the court reasoned as follows: "There is no doubt that if Defendant had used a single brick to hit the victim, he could be convicted of using a deadly weapon. We believe that common sense precludes the conclusion that because Defendant shoved the victim against a brick wall instead of hitting the victim with a brick, Defendant could not be convicted of use of a deadly weapon."[29]

In a case very similar to *Montano*, the Oregon Court of Appeals found a concrete sidewalk to have been used as a deadly weapon.[30] In that case, the court stated it failed to see a distinction between a stationary or movable

---

[22] *People v. Coe* (1990) 165 A.D.2d 721 [564 N.Y.S.2d 255].

[23] *People v. Coe, supra*, 564 N.Y.S.2d 255.

[24] *People v. Coe, supra*, 564 N.Y.S.2d at page 256.

[25] *People v. Coe, supra*, 564 N.Y.S.2d at pages 255–256.

[26] *People v. Coe, supra*, 564 N.Y.S.2d at page 256, citing *People v. Carter* (1981) 53 N.Y.2d 113, 116 [423 N.E.2d 30, 440 N.Y.S.2d 607].

[27] *State v. Montano* (1998) 1999 NMCA 23 [126 N.M. 609, 973 P.2d 861].

[28] *State v. Montano, supra*, 126 N.M. at page 610.

[29] *State v. Montano, supra*, 126 N.M. at page 611.

[30] *State v. Reed, supra*, 101 Or.App. 277.

object.[31] Finding no difference between a defendant who causes a victim injury by striking the victim with a hand-held piece of concrete, and one who injures a victim by forcibly bringing the victim's body into contact with a concrete sidewalk, the court remarked, " '[w]hether the pitcher hits the stone or the stone hits the pitcher, it will be bad for the pitcher.' "[32]

We agree with the above rulings, and fail to see a relevant difference between one who wields a dangerous object and one who intentionally utilizes the deadly properties of a stationary or moving object for purposes of committing an assault under section 245, subdivision (a)(1) of the California Penal Code.

In the District of Columbia (D.C.), the appellate court reached a contrary conclusion involving a stationary object. However, its rationale is readily distinguishable from the decisions in other jurisdictions because of critical differences in the language of the applicable D.C. statute. In *Edwards v. U. S.*[33] the court found bathroom fixtures against which the defendant beat his girlfriend's head did not constitute a deadly weapon justifying a heavier sentence. The court conceded the statute would have applied had the defendant detached the fixtures and used them to bludgeon the victim.[34] But it reasoned those fixtures were a "pre-existing part of the surroundings in which [defendant] found himself . . . and not something which [defendant] could possess or . . . arm himself."[35] The *Edwards* opinion is clearly distinguishable, however, because the D.C. "deadly weapons" statute requires the defendant to have been "armed" with a dangerous weapon. To be "armed" would require one to physically possess the instrumentality, while section 245, subdivision (a)(1) only requires an object be "used" in a deadly way.

■ If, as the several cases discussed above suggest, a *stationary* object can qualify as a "deadly weapon" when a defendant forcefully pushes a victim against it, a fortiori, a *moving* object can be considered a "deadly" weapon when the force of the object's movement can be deadly and a defendant pushes a victim into its path. Thus, we have no difficulty whatsoever finding the act of pushing a victim into the path of an oncoming motor vehicle represents the "use" of a "deadly weapon." An automobile weighing several thousand pounds and underway on a street is capable of seriously injuring and often killing any person it strikes. Just as the *Pagan*[36] court

---

[31] *State v. Reed, supra,* 101 Or.App. at page 279.

[32] *State v. Reed, supra,* 101 Or.App at page 280, quoting Miguel de Cervantes, *Don Quixote,* part II, chapter 43 (1615).

[33] *Edwards v. U. S., supra,* 583 A.2d 661.

[34] *Edwards v. U. S., supra,* 583 A.2d at page 667.

[35] *Edwards v. U. S., supra,* 583 A.2d at page 665.

[36] *People v. Pagan, supra,* 553 N.Y.S.2d 380.

found the accused "used" the force of the moving train to commit robbery, we find appellant "used" the force of Francis's vehicle to commit this assault. Like the *Pagan* court, we decline to see any difference between one who uses the *force* of a potentially deadly object to commit an assault, and one who uses an object to commit an assault while physically possessing or controlling that object. Putting the "pitcher" in the path of a "stone" someone else throws has the same result as personally grabbing the stone and striking the pitcher. It represents the same "use" of the stone's damaging properties to break the pitcher. For the same reason, we find appellant "used" Francis's car within the meaning of Penal Code section 245, subdivision (a)(1) if he intentionally pushed the victim into the oncoming car.

> B. *Sufficient Evidence Supported the Inference Appellant Intended to Push the Victim into the Path of the Oncoming Automobile.*

Next, appellant contends that even if his actions could constitute "use" of the vehicle as a deadly weapon, they do not do so here because the evidence was insufficient to establish appellant was aware of the approaching car, and thus the prosecution failed to prove the intent element of the aggravated assault beyond a reasonable doubt. Appellant points to testimony from the trial in which Francis, the driver of the vehicle, states that as she approached the area where the victim was pushed into the street, she saw appellant and the victim walking in the same direction as her car, slightly ahead of her and with their backs toward her. Thus, appellant argues, it was unlikely appellant was even aware of the approaching car. Furthermore, the victim testified the person who pushed him did so immediately after the victim refused to give the appellant money, and thus, it is more likely the push was simply an immediate angry response to the victim's refusal, not part of a plan to utilize the approaching car as a deadly weapon.

In determining the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine "whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."[37] The appellant points out the record lacks any strong direct evidence appellant was aware of the approaching car. Although it is plausible appellant merely intended to push the victim into the street with no awareness of the approaching car, we must not disturb the jury's factual findings unless the evidence is wholly lacking. The jury could have found appellant heard Francis's car or otherwise sensed it approaching as it began to accelerate from the stoplight. This would not be an

---

[37] *People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618]; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].

unreasonable conclusion in light of the fact Francis testified she was driving a 1985 Mercedes diesel at the time of the incident. Common experience tells us older cars are generally noisier than newer cars.

Furthermore, this is not a case where appellant pushed the victim into an empty street or where the victim made no contact with a passing vehicle. Here appellant pushed Abtia into the same traffic lane where Francis's car was approaching, threatening a fatal accident. Despite the driver's attempts to avoid hitting Abtia, the vehicle struck and injured him. The jury could reasonably conclude this was no coincidence. A jury is entitled to infer a defendant intended to shoot a person from the fact he fired a bullet that hit that person. The jury here could justifiably infer appellant intended to push Abtia into the path of this automobile from the fact he undeniably pushed Abtia into the street and the car indeed struck this victim. Applying the substantial evidence standard, we determine a reasonable juror *could* find appellant intended to push the victim into the path of Francis's car.

For the foregoing reasons, we find the evidence sufficient to support a conviction for assault with a deadly weapon, where the weapon "used" by the appellant was the vehicle driven by Francis.

II. *THE EVIDENCE WAS SUFFICENT TO ESTABLISH A VIOLATION OF PENAL CODE SECTION 245, SUBDIVISION (a)(1) UNDER THE THEORY APPELLANT'S ACT CONSTITUTED AN ACT "LIKELY" TO CAUSE GREAT BODILY INJURY.*

Appellant contends we must find his acts were "likely" to cause great bodily injury regardless of whether the evidence was sufficient to support the prosecution's theory of assault with a deadly weapon, because the jury received a combined instruction and did not state the basis upon which it found appellant guilty of aggravated assault.[38]

" 'Likely' means 'probable' or . . . 'more probable than not.' "[39] Penal Code, section 245 "prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury [and though] the results of an assault are often highly probative of the amount of force used, they cannot be conclusive."[40]

Appellant pushed the victim into a four-lane street located in a commercial area. The victim was indeed struck by an oncoming vehicle. Francis testified

---

[38] *Martinez v. Garcia, supra,* 379 F.3d at page 1034.

[39] *People v. Savedra* (1993) 15 Cal.App.4th 738, 744 [19 Cal.Rptr.2d 115].

[40] *People v. Muir* (1966) 244 Cal.App.2d 598, 604 [53 Cal.Rptr. 398].

appellant "shoved [the victim] hard enough to throw him into the windshield of [her] car." While a push in itself will not usually constitute force sufficient to support an aggravated assault conviction,[41] it may in some circumstances. For example, in *People v. Conley*,[42] the defendant shoved the victim out of the front door of a café with such force the victim hit his head on a parking meter outside the cafe and suffered serious injury. The Fourth Appellate District dismissed defendant's claim the evidence was insufficient to support a conviction for assault by means of force likely to cause great bodily injury.[43] The court found the attack was viciously made "with unnecessary force, and without any reasonable provocation."[44]

■ In the present case it is not necessarily the force of appellant's push, so long as it was sufficient to propel Abtia into the street when Francis's car was approaching. It is the injury-producing potential of the moving automobile that supplies the likelihood of great bodily injury or worse. True, Abtia did not suffer major injury. Nonetheless, as discussed above, appellant's acts need not actually result in serious injury, but must only be *likely* to cause great bodily injury. Pushing a person into the path of an oncoming automobile is "likely" to cause serious injury, whether this particular victim suffered such injuries or not. Here, indeed, the actual injuries were relatively minor only because the driver saw Abtia and maneuvered to avoid running over him.

Appellant argues the light traffic and time of day made it unlikely Abtia would be hit by a passing car, and therefore, it cannot be shown it was more probable than not Abtia would be hit by a car after being pushed into the street. This argument only has merit if we assume appellant was unaware of Francis's car. However, as discussed earlier in this opinion, we concluded substantial evidence supported a finding appellant was aware of Francis's approaching car when he pushed Abtia into its path. Intentionally pushing a person in front of a moving vehicle is clearly more likely to cause great bodily injury than pushing a person who happens to then fall into a street at a time when a car happens to arrive. Under these circumstances, a reasonable jury could easily find the force used on the victim constituted force likely to cause great bodily injury.

■ Because we conclude sufficient evidence supported either and both of the theories submitted to the jury, we find it unnecessary to consider

---

[41] *In re Ronnie N.* (1985) 174 Cal.App.3d 731, 735 [220 Cal.Rptr. 365] ("[A] push that results in a fall and concomitant serious injury may not be sufficient deadly force to permit successful prosecution under section 245, subdivision (a)").

[42] *People v. Conley* (1952) 110 Cal.App.2d 731, 733 [243 P.2d 874].

[43] *People v. Conley, supra,* 110 Cal.App.2d at pages 737–738.

[44] *People v. Conley, supra,* 110 Cal.App.2d at page 737.

appellant's third argument. No matter whether the jury found appellant guilty only of using the oncoming car as a "deadly weapon" or only of committing acts "likely" to inflict great bodily injury, he violated section 245, subdivision (a)(1). Accordingly, the fact the trial court gave an instruction combining these two theories is irrelevant to the validity of appellant's conviction under this section of the Penal Code.

## DISPOSITION

The judgment is affirmed.

Perluss, P. J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 7, 2005.