Filed 8/16/22 P. v. Alarid CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076166 |
| v. | (Super.Ct.No. RIF1703061) |
| FRANK SERGIO ALARID, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Frank Sergio Alarid and his wife (Wife) were at the Sevilla Night Club in Riverside when Wife was escorted out of the club by two security officers for appearing to be too intoxicated. Wife was upset and said she had been arguing with defendant, who was still in the club. Defendant came outside and approached Wife. She told the security officers she did not want to leave with him. Defendant eventually got his car and Wife agreed to go home with him. Once they were in the car, defendant punched Wife three times in the face with a closed fist until she appeared to be unconscious. The security officers yelled at defendant to stop. Defendant drove his car directly at one of the security officers, hitting him in the knee with the car and causing him to fall to the ground. Defendant drove away.

Defendant was convicted on September 30, 2020, of one count of assault with a deadly weapon other than a firearm, a car (Pen. Code, § 245, (a)(1); count 1)[1]; and one misdemeanor count of battery on a cohabitant (§ 243, subd. (e)(1); count 2).[2] Defendant was sentenced to three years probation, which included a 364-day jail term.

Defendant claims on appeal that (1) the trial court erred by admitting evidence of other uncharged domestic violence evidence pursuant to Evidence Code section 1109; (2) the evidence was insufficient to support his conviction of assault with a deadly weapon; (3) the trial court erred in imposing victim restitution in the amount of $2,400 without

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury was unable to reach a verdict on a great bodily injury allegation on count 1 alleged pursuant to section 12022.7, subdivision (a), and that allegation was dismissed by the People.

sufficient proof of the amount and without affording him a hearing; and (4) remand is necessary in order to reduce his probation term from three years to two years under recently-enacted Assembly Bill No. 1950 (Stats. 2020, ch. 328, § 2) (AB 1950), which amended Penal Code section 1203.1 effective January 1, 2021 to limit the probation term for most felonies to two years.

**FACTUAL HISTORY**

A.     PEOPLE'S CASE-IN-CHIEF

1.     *CURRENT INCIDENT*

On the night of January 14, 2017, Christopher H. was working as a private security guard at Sevilla Night Club in Riverside (the club). Cameron M. also worked as a security guard as an employee of the club. At the location, there was an inside dance area and an outdoor glassed-in patio.

Around 1:00 a.m., on January 15, 2017, Wife was escorted out of the club by Cameron and another security guard for being overly intoxicated. Wife had slurred speech and was "out of it." She was having trouble standing. Christopher was outside the club and directed Wife to sit in the patio area. Wife stated she had been at the club with the father of her children and they had been arguing.

Defendant emerged from the club and approached them. Defendant was aggravated or mad; he told Wife to get up and they were leaving. Christopher told defendant they were still evaluating Wife to see if she needed any medical attention. Defendant walked away and punched the glass patio wall with his fist. Wife told Christopher she would go with defendant; she insisted he would not hurt her.

3

Wife walked out to the street but fell. Christopher went to check on her but defendant grabbed her by the arm and her breast. She started screaming. Christopher brought her back to the patio. Wife sat for a few minutes and then said that she was fine. She told defendant to go get their car.[3]

Defendant drove up in his car. Christopher stood at the front of the car while Cameron and defendant helped Wife get into the car. Defendant got back into the driver's seat. Defendant punched Wife in the face with a closed fist. Wife slumped over and appeared to pass out. Christopher and Cameron yelled to defendant to turn off his car and get out so they could make sure Wife was okay. Cameron tried to open one of the doors to help Wife, but it was locked.

Defendant accelerated backward almost hitting a passing truck. Defendant then accelerated his car forward, veering toward Christopher and Cameron who were standing on the opposite side of the road. The car came directly at Christopher. Christopher tried to get out of the way but was struck in the right leg area by the left front corner of the car. Christopher was knocked down to the ground and fell into a planter. He did not immediately feel any pain. Cameron stated that defendant had to turn the car toward him and Christopher to hit Christopher.

Defendant drove off. Christopher stood up but fell down again. They called the police. Christopher gave a description of defendant and Wife to the police. Christopher did not seek medical treatment that night. He only had red marks on his leg. The next

_____

[3] Cameron testified that the car had been in the valet and was pulled up to the restaurant.

4

morning he started to have pain. He went to a chiropractor for treatment. He had suffered injuries that were not present prior to being hit by the car. He was treated for five to six months until he could no longer afford treatment. He still had pain in his lower back. The pain had affected his everyday life.

On April 15 2017, Christopher identified defendant from a six-pack photographic lineup. Christopher identified the woman at the club that night from a photograph he was shown prior to trial.

Wife was nervous to testify in the case. Defendant and Wife had been married for 13 years. They had six children and she was pregnant at the time of trial. She and defendant went to the club on January 14, 2017 together. She only had two drinks; she was not drunk. Wife denied she was escorted out of the club and never spoke with any of the security guards. She and defendant walked out of the club around 1:00 a.m. Her feet hurt so he went to the get the car while she waited out in front of the club. Defendant never grabbed her arm and she was never screaming.

While Wife was waiting, a group of men came toward her. They were wearing suits but did not have anything identifying them as security guards. She was afraid because she was alone. They tried to talk to her but she did not respond. Defendant arrived with their car and helped Wife into the passenger's seat. When defendant got back in the car he did not hit or slap her. Defendant drove out of the parking lot. He did not hit anyone.

Riverside Police Detective Zuetel responded to the club that night. He arrived around 1:00 a.m. and first spoke with Christopher. Christopher told him that defendant

5

had slapped Wife three times, and punched her twice with a closed fist. Defendant then drove his vehicle toward Christopher, striking him. Cameron told him a similar story about what had happened. Christopher was wearing a security guard uniform; Cameron was wearing a suit. Christopher did not want medical attention.

Dr. Scott Won was a chiropractor who treated Christopher. On February 15, 2017, Christopher came to his office complaining of pain and limited range of motion throughout his body. Christopher had already sought treatment at an urgent care facility. Christopher was suffering from lower back pain, which was shooting down his legs. He had pain in his knees and neck. Dr. Won took x-rays and determined that Christopher had bulging discs in his lower back. This would have contributed to the shooting pain down his legs. Dr. Won observed that Christopher had several sprains including on his right knee. He suffered pain and swelling in the knee. He had loss of motion in the knee. Christopher's range of motion in his spine was significantly impacted. His right hip was injured and he had a moderate loss of range of motion.

Dr. Won treated Christopher from February 15, 2017, to April 14, 2017. His range of motion in the spine improved. He had minimal improvement on his right hip and knee. Christopher came to his office two or three times each week. Christopher still had pain when he stopped treatment.

### 2. *PRIOR INCIDENTS*

#### a. 2012 Incident

Rialto Police Officer Ballew was on duty as a patrol officer on March 3, 2012. He responded to an emergency room at a hospital in Fontana on that day. He spoke with

6

Wife. Wife told Officer Ballew that she had been attacked by defendant at their home in Rialto. Wife had discovered that defendant was seeing another woman and they argued about it. Wife had a cellular telephone in her hand and defendant tried to take it from her. He pushed her to the ground and sat on top of her trying to get the phone away from her. He got up and allowed her to go inside their residence.

The altercation continued inside the residence. Defendant pushed Wife on the bed, got on top of her and took her phone. He threw it and broke it. Wife had several scratches on her upper body as well as redness on her upper chest area.

Wife admitted in her testimony that she spoke with an officer at the hospital on March 3, 2012. She insisted that she and defendant fell to the ground outside while he was trying to get her phone. He did not push her to the ground. She denied that defendant followed her to the bedroom and pushed her on the bed. She had no injuries that day caused by defendant. She went to the hospital because she had abdominal pain.

b. 2017 Incident

San Bernardino Police Detective Olvera responded to a residence on February 19, 2017, located on Lincoln Avenue in San Bernardino at approximately 2:00 a.m. When he arrived, all of the lights in the home were on. He could hear from outside a loud television and a male and female arguing. He could also hear children screaming and crying. Detective Olvera knocked on the front door identifying himself as a police officer. No one answered the door. Detective Olvera spoke with a neighbor who confirmed hearing the children screaming and crying inside, and a male and a female

7

arguing. Detective Olvera was concerned about the children so he and other officers forced entry by kicking in the front door.

Detective Olvera observed defendant standing inside the apartment. Defendant had his arms to his sides with his fists clenched. He had watery eyes and an unsteady gait. Detective Olvera was able to detain defendant. Three children ran down the stairs crying. Detective Olvera went upstairs because he heard children crying. He found a locked bathroom and ordered the occupants out. Detective Olvera had to kick in the bathroom door. Inside was Wife with two small children. Wife was crying and looked scared.

Wife had redness and swelling on her forehead and right shoulder. She also had scratches on her arm and shoulder. She was bleeding. Wife blamed the injuries on a skin condition. Detective Olvera concluded that some type of domestic violence had occurred.

Wife was asked about the incident that occurred on February 19, 2017, during her testimony. She acknowledged that officers responded to their house on Lincoln Avenue at approximately 2:00 a.m. on February 19. She and her children were watching a movie. Defendant was sleeping in their upstairs bedroom. She was afraid that a neighbor had made a noise complaint. When the police arrived, she and defendant were not arguing and the children were not crying. Wife was scared—she did not like the police—so she sent all the children to their bedrooms and woke up defendant. Her baby started crying so she took him into the bathroom. She locked the door. The police eventually broke

8

open the door. They put her in handcuffs. She denied she had any injuries. She and defendant were not arguing that night.

Defendant presented no evidence on his own behalf.

**DISCUSSION**

A.      EVIDENCE CODE SECTION 1109

Defendant contends the trial court erred by admitting his prior domestic violence incidents occurring between him and Wife in 2012, and after the instant crime in 2017, as propensity evidence under Evidence Code section 1109. Defendant insists the prior act of domestic violence that occurred on March 3, 2012, was too remote. The remoteness of the incident rendered it more prejudicial than probative. As for the incident occurring on February 19, 2017, the admission of the incident was more prejudicial than probative because of the closeness between the two incidents.

1.      *ADDITIONAL FACTUAL HISTORY*

Prior to trial, defendant brought a motion to exclude any prior acts of domestic violence. The People filed a trial brief outlining the prior acts of domestic violence committed by defendant against Wife, which mirrored the facts presented at trial and need not be repeated here. The People insisted these incidents were admissible pursuant to Evidence Code section 1109.

The motion was heard prior to trial. Defendant argued the trial court should exclude the evidence under Evidence Code section 352. Defendant argued it would take an undue consumption of time as two different officers would have to testify. As for the incident in 2012, defendant argued the incident was prejudicial as Wife was four months

9

pregnant. The trial court agreed that it was highly prejudicial that Wife was pregnant. The trial court found that it would not be an undue consumption of time to present the 2012 incident. It was not going to mislead or confuse the jury. The People were admonished not to have the testifying officer or Wife mention that she was pregnant. The probative value substantially outweighed any prejudice.

Defendant argued that a subsequent incident was not relevant. It would also result in an undue consumption of time and was cumulative to the 2012 incident. The trial court found that the probative value outweighed any prejudice. It would not confuse the jury and would not take any undue amount of time. The evidence was not more inflammatory than the incident in the current case.

After Wife testified, the trial court admonished the jury, "the People have presented evidence that he defendant committed domestic violence that was not charged in this case as you just heard. . . . [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden of proof, you must disregard this evidence entirely. If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence, and based upon that decision also conclude that the defendant was likely to commit the offenses charged in this case. [¶] If

10

you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It's not sufficient by itself to prove that the defendant is guilty of the charges in this crime. The People still must prove each element of each charge beyond a reasonable doubt. Do not consider this evidence for any other purpose."

> ### 2. *ANALYSIS*

Subdivision (a)(1) of Evidence Code section 1109 provides in part, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." Subdivision (e) provides, "Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice." "[I]n enacting Evidence Code section 1109, the Legislature found that in domestic violence cases evidence of prior acts is particularly probative in demonstrating the propensity of the defendant. ' "The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked." ' " (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 705-706.)

"Under Evidence Code section 352, a trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time. 'Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' " (*People v. Riggs* (2008) 44 Cal.4th 248, 289-290.) "We review a challenge to a trial court's decision to admit [this] evidence for abuse of discretion." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.)

Here, the act occurring in 2012 was only five years prior to the charged offense.[4] It was not too remote under the statute. Moreover, the two prior incidents involved defendant and Wife. " 'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.) The prior incidents occurred between defendant and Wife and showed a pattern of defendant getting angry with Wife, resulting in application of physical violence against her. The prior incidents also did not involve an undue consumption of time or confuse the jury. Wife presented her testimony on the prior incidents during her testimony on the charged offense, and only one officer was called as to each incident. The two prior incidents were highly relevant to the charges, which involved Wife denying any abuse by defendant.

---

[4] Defendant relies on *People v. Harris* (1998) 60 Cal.App.4th 727, 738-740. However, the prior crimes in *Harris* occurred 23 years prior to the charged offense. (*Ibid*.)

12

Additionally, the prior incidents were not more inflammatory than the charged offense. In the instant case, defendant punched Wife three times in the face and she appeared to be rendered unconscious. In the prior incidents, she only suffered scratches and redness. The prior incidents did not involve blows to the head as in this case, and did not involve more serious injuries.

Defendant insists that the admission of the prior incidents resulted in the jury determining his guilt on count 2 based on the cumulative effect of all three incidents, and not based on the evidence of the charged offense. However, the jury was specifically instructed it could not consider the evidence as defendant was guilty of the charged offense. There simply is no evidence that the jury found defendant guilty of the charged offense based solely on the prior offenses.

The trial court properly admitted the two prior incidents of domestic violence between Wife and defendant because their probative value outweighed any potential prejudice.

B.      INSUFFICIENT EVIDENCE OF ASSAULT WITH A DEADLY
          WEAPON

Defendant contends the evidence was insufficient to support his conviction of assault with a deadly weapon. Defendant insists he did not drive his vehicle in an attempt to commit an injury to another person.

1.      *STANDARD OF REVIEW*

In assessing the sufficiency of the evidence to support a conviction, "we review the whole record to determine whether any rational trier of fact could have found the

13

essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] . . . 'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### 2.  *ASSAULT WITH A DEADLY WEAPON*

"The crime of assault with a deadly weapon has two components:  '(1) the assault, and (2) the means by which the assault is committed.' " (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 85.)  " 'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." ' " (*In re B.M.* (2018) 6 Cal.5th 528, 532-533 (*B.M.*).)  Accordingly, "the object alleged to be a deadly weapon must be used in a manner that is not only 'capable of producing' but also ' "*likely to produce* death or great bodily injury." ' " (*Id.* at p. 533.)

"Whether an object is a deadly weapon is a question of fact. [Citation.] 'In determining whether an object not inherently deadly or dangerous is used as such, the

trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.' " (*People v. Marsh* (2019) 37 Cal.App.5th 474, 485.) "Analysis of whether the defendant's manner of using the object was likely to produce death or great bodily injury necessarily calls for an assessment of potential harm in light of the evidence. As noted, a mere possibility of serious injury is not enough. But the evidence may show that serious injury was likely, even if it did not come to pass." (*B.M.*, *supra*, 6 Cal.5th at p. 535.)

In *People v. Russell* (2005) 129 Cal.App.4th 776, a case in which the victim was pushed in front of a car by the defendant and the defendant was found to have used the car as a deadly weapon, the court noted that "[t]he law makes clear a person who operates or drives a vehicle in an attempt to injure another person has committed assault with a deadly weapon, to wit, the car." (*Id.* at p. 782.) It noted, "An automobile weighing several thousand pounds and underway on a street is capable of seriously injuring and often killing any person it strikes." (*Id.* at p. 785.)

Substantial evidence supported the determination by the jury that defendant created a likelihood of great bodily injury when he drove his car and hit Christopher. Christopher testified that, "the vehicle could have stayed straight on his normal pace out of the driveway, but it veered on the opposite side of the road where I was standing." Christopher yelled for defendant to stop the car. Cameron also testified that defendant drove his car directly at Christopher. Christopher tried to get out of the way but was struck in the right leg area by the left front corner of the car. Such actions were likely to cause great bodily injury to Christopher.

15

Defendant claims he did not drive the vehicle in an attempt to commit an injury to another, but rather was only trying to leave the club. However, as stated, the evidence established that defendant could have driven away from the club and not harmed anyone. Instead, he steered his vehicle toward Christopher and Cameron, striking Christopher, who was unable to get out of the way. Christopher was knocked to the ground based on the force of the vehicle striking him. Although the jury found that Christopher had not suffered a substantial injury, he suffered pain and swelling in his knee. The evidence established that defendant used his vehicle in a manner that was capable and likely to produce great bodily injury.

Defendant additionally contends that if he drove as indicated by Christopher and Cameron, the jury would not have been deadlocked on the great bodily injury allegation. Christopher testified he was struck in the knee but other evidence presented by Dr. Won showed that his serious injuries were to his back. The jury reasonably could have concluded that he did not suffer such injury as a result of defendant hitting Christopher with his car. However, as stated, no injury is required in order to find defendant guilty of assault with a deadly weapon. (*B.M.*, *supra*, 6 Cal.5th at p. 535.) It was enough that defendant driving and hitting Christopher was likely to cause great bodily injury. Substantial evidence supports defendant's conviction for assault with a deadly weapon.

C.     <u>VICTIM RESTITUTION</u>

Defendant contends the trial court erred when it imposed victim restitution payable to Christopher in the amount of $2,400 without sufficient proof that this would compensate Christopher for the injuries caused by defendant and without a hearing.

16

Remand is necessary for the trial court to hold a hearing and defendant must be afforded an opportunity to contest any amount ordered.

## 1. *ADDITIONAL FACTUAL HISTORY*

The probation report provided that Christopher was sent a Victim Impact/Statement of Loss letter by the probation department. He was advised that he had a right to be present at the sentencing hearing and had the "right to submit receipts for reimbursement if the offense(s) resulted in financial loss." Nothing was sent back in writing but the probation officer spoke with Christopher on the phone on October 26, 2020. Christopher stated he received medical treatment for his injuries until he could not afford it. He had $2,400 in medical bills. Christopher wanted restitution for his medical expenses. The probation report recommended that a term of defendant's probation be the payment of the $2,400 restitution fine to Christopher.

At sentencing, the trial court stated, "I'm awarding restitution to [Christopher], according to the recommendation of the probation officer, which is 2,400. If he has further medical expenses down the road, he can also request further reimbursement so long as they're associated with his injury that he sustained that night." Victim restitution for Wife was to be determined later. Defendant did not object to any of the probation terms and had no questions about the terms.

## 2. *RELEVANT LAW*

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss

17

claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) This includes medical expenses. (§ 1202.4, subd. (f)(3)(B).) "[D]irect victims of crime have a statutory right to restitution on the full amount of their losses." (*People v. Baker* (2005) 126 Cal.App.4th 463, 468.)

A defendant has the right to a restitution hearing "to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).) At a victim restitution hearing, the People may make a prima facie case for restitution based on the victim's testimony or on some other claim or statement as to the amount of his or her economic loss. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) Once the People have made a prima facie case for restitution, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Ibid.*)

" ' " '[S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider' " ' in determining victim restitution." (*People v. Phu* (2009) 179 Cal.App.4th 280, 283.) " ' [T]he trial court is entitled to consider the probation report when determining the amount of restitution. [Citation.] For example, statements by the victims of the crimes about the value of the property stolen constitute 'prima facie evidence of value for purposes of restitution.' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.) "Absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion." (*Ibid.*)

A restitution order is reviewed under the abuse of discretion standard. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) As long as the record contains " ' " 'a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761.)

### 3. *WAIVER*

The People contend defendant waived this claim as he never objected to the amount recommended in the probation report and did not request a hearing. Defendant was aware of the probation report and the recommendation that his probation term include victim restitution in the amount $2,400 to compensate Christopher for his medical expenses. Defendant did not object to the amount and did not request a hearing. The trial court could rely on the statements in the probation report to support the amount of restitution. (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048.) As such, defendant has waived the claim on appeal.

Defendant claims that if this court determines that he has waived the claim, he received ineffective assistance of counsel for his counsel's failure to object to the lack of documentation and the right of defendant to have a hearing. "The standard for showing ineffective assistance of counsel is well settled. 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a

19

presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel.' " (*People v. Gray* (2005) 37 Cal.4th 168, 206-207; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

"When a defendant alleges that his counsel failed to take a particular action, he must show a reasonable probability that the attorney's omission affected the outcome of the case. [Citation.] [I]t is not enough [that a defendant] merely . . . assert that his counsel should have requested a hearing on the amount of restitution. Rather, he had the burden of demonstrating that the value recommended in the probation report was excessive. In other words, he had to make a sufficient showing that but for his counsel's conduct, the court was reasonably likely to have ordered a lesser amount or no restitution." (*People v. Foster*, *supra*, 14 Cal.App.4th at p. 947.)

Defendant insists that counsel should have objected to the amount in the probation report as not being supported by sufficient documentation. However, as stated, the law supports that the trial court could rely on statements in the probation report in determining the amount of restitution and the burden was on defendant to rebut the amount. (*People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048.

Defendant further claims that if he had been afforded a hearing, his counsel could have questioned whether the medical expenses incurred by Christopher were due to his injuries from being hit by defendant's car. However, defendant does not provide what his counsel could have presented at the hearing other than speculation that all of

20

Christopher's expenses were not related to him being hit by defendant's car. Such speculation does not support that he received ineffective assistance of counsel. Defendant fails to meet his burden of demonstrating that a more favorable outcome was probable, had his counsel objected to the restitution amount and requested a hearing on the amount.

D.     <u>PROBATION TERM</u>

Defendant contends pursuant to AB 1950 that remand is necessary for the trial court to reduce his probation term from three years to two years.

Here, at the time of sentencing on November 16, 2020, the trial court indicated it intended to grant probation for a term of three years, with one year in county jail custody. The trial court stated as to the sentence, "It's three, mid-term is three on Count 1, and then the one year, concurrent, on Count 2, that is four years." The trial court clarified that it was three years.

At the time of sentencing, section 1203.1, subdivision (a), provided for a three-year probation term for most felony offenses. However, AB 1950 amended section 1203.1, subdivision (a), effective January 1, 2021. It now provides that the court "in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a).) Other courts have found that AB 1950 is retroactive and we agree. (*People v. Quinn* (2021) 59 Cal.App.5th 874, 884.)

21

The People contend that since defendant was convicted of domestic battery, he was not entitled to the reduction of his probation term pursuant to Penal Code section 1203.1. Penal Code section 1203.1, subdivision (l), provides, in part, "The two-year probation limit in subdivision (a) shall not apply to: [¶] (1) An offense listed in subdivision (c) of [Penal Code s]ection 667.5 and an offense that includes specific probation lengths within its provisions." Penal Code section 1203.097 provides the guidelines for probation in domestic violence cases. Penal Code section 1203.097 provides, "(a) If a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code, the terms of probation shall include all of the following: [¶] (1) A minimum period of probation of 36 months, which may include a period of summary probation as appropriate." Family Code section 6211 defines "domestic violence" as abuse perpetrated against a spouse or former spouse, cohabitant, or a person with whom the perpetrator has had a child.

Here, defendant was found guilty of misdemeanor domestic battery in count 2. The jury was instructed that in order to find defendant guilty of battery against a cohabitant in count 2, it must find that Wife was defendant's former spouse, cohabitant, a person with whom defendant had a relationship, or the mother of defendant's child. The jury was instructed that defendant was presumed to be the father of Wife's children. Hence, in finding defendant guilty of count 2, the jury determined that the crime involved domestic violence within the meaning of section 1203.097.

The trial court was required to impose probation pursuant to section 1203.097. "[A] defendant who is placed on probation for committing a crime against a victim of

22

domestic violence, as defined by section 1203.097, has committed 'an offense that includes specific probation lengths within its provisions.' [Citation.] In such circumstances, and in the absence of a contrary legislative indication, the two-year felony probation limitation codified in section 1203.1, subdivision (a) does not apply." (*People v. Forester* (2022) 78 Cal.App.5th 447, 457-458.)

For purposes of applying the maximum periods of probation in section 1203.1, courts have treated probation for multiple counts as a single period, thus precluding the imposition of a series of separate and consecutive probation terms. (See *Fayad v. Superior Court* (1957) 153 Cal.App.2d 79, 83-84 ["multiple sentences directed to run consecutively are to be regarded as a single 'sentence of imprisonment' for the purpose of applying the provisions of Penal Code, § 1203a and the court is without authority to impose a series of separate and consecutive periods of probation"]; *People v. Blume* (1960) 183 Cal.App.2d 474, 481-482; *People v. Cole* (2020) 50 Cal.App.5th 715, 719.) "[D]efendants convicted of multiple counts, any one of which excludes them from AB 1950 and who are subject to the 'maximum sentence' period of probation, will have the status of an excluded defendant for the entire case, regardless of the number of counts and regardless of whether some of the counts are crimes which otherwise would be subject to limited terms of probation under AB 1950." (Couzens, et al., Sentencing Cal. Crimes (The Rutter Group 2021) §§ 8:15.20.)

Here, the trial court stated that it was imposing and suspending a three-year sentence on count 1, and imposed a sentence of one year on count 2, which was to run concurrent to count 1. However, it granted defendant a single probationary term of three

years.  The charges included a conviction for domestic violence, which was subject to a three-year probation term, an exception to section 1203.1's two-year probation limit.  The trial court properly imposed a three-year probation term.

## DISPOSITION

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____

J.

We concur:

RAMIREZ_____

P. J.

FIELDS_____

J.