Filed 1/8/25  P. v. Wang CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>QINGYU WANG,<br><br>    Defendant and Appellant. | G064340<br><br>(Super. Ct. No. RIF2202020)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Irma Poole Asberry, Judge. Affirmed with directions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Collette C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Qingyu Wang of one count of attempted murder (Pen. Code, §§ 187, subd. (a), 664; count 2)[1], two counts of assault with a deadly weapon or force likely to produce great bodily injury (§ 245, subd. (a)(1); counts 3 & 4), and one count of inflicting corporal injury resulting in traumatic injury (§ 273.5, subd. (a); count 5).[2] The jury also found all the offenses involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; and that defendant engaged in violent conduct indicating he was a serious danger to society.

The court sentenced defendant to an aggregate term of 10 years in state prison as follows: (1) nine years on count 2; (2) one year on count 3 to be served consecutive to count 2; and (3) one year each on counts 4 and 5, which were stayed pursuant to section 654.

Defendant raises three issues on appeal. First, he contends there was insufficient evidence to support his attempted murder conviction. Second, he argues the court should have instructed the jury sua sponte on various lesser included offenses. Finally, he claims the abstract of judgment should be corrected to reflect his second degree attempted murder conviction. We agree with defendant's last contention. In all other respects, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code.

[2] The jury found defendant was not guilty of one count of attempted murder (§§ 187, subd. (a), 664; count 1).

FACTS

I.

PROSECUTION CASE

In April 2022, defendant's wife, S.S., worked as a truck driver and arranged to carpool with her male coworker, Z.Z., on a long-distance work trip. S.S. expected to be gone for several days and told defendant she was going on a trip with a coworker. Defendant had not previously met Z.Z.

S.S. and Z.Z. met somewhere near her home, and S.S. left her car behind to ride with Z.Z. When asked why Z.Z. did not pick her up from her home, S.S. testified she originally planned to drive but did not feel well after she started driving so she asked Z.Z. to carpool.

According to S.S., her work trip was cancelled the next day, and she and Z.Z. returned to where they had left her car and began unloading her belongings from Z.Z.'s car. S.S. testified she had contacted defendant, told him the trip was cancelled, and asked him to meet at her car to assist with her belongings. While S.S. and Z.Z. were unloading items, defendant arrived in his van and ran into both of them. At trial, the prosecutor had S.S. and Z.Z. watch video footage, which depicted defendant running his van into them. S.S. testified she fell over, bruised her leg, and hit her head. Z.Z. testified he scraped his arm and leg and had some injuries on his "head area." Z.Z. did not hear any honking before defendant's car hit him and did not know defendant would be there.

After defendant's car hit S.S. and Z.Z., defendant made a U-turn, drove toward them a second time, and eventually stopped the car on a sidewalk. S.S. realized it was defendant's car and approached defendant who said, "he was not doing it intentionally and asked if [they] were injured and whether or not [they] needed to be sent to the hospital." According to S.S.,

3

defendant asked Z.Z. who he was and why he was carrying S.S.'s bag. S.S. believed defendant identified himself as her husband and spoke in a nervous tone. Z.Z. testified defendant asked him why he was with S.S. and why they were using the same car.

At some point, Z.Z. struck defendant's car with an object, and they proceeded to push each other. S.S. claimed the pushing lasted "tens of seconds." They then "took a break" and waited for an ambulance to arrive. Both S.S. and Z.Z. were transported to the hospital.

S.S. and Z.Z. denied having any relationship aside from their work relationship. S.S. testified she intended to stay married to defendant and did not want to testify against him. At the time of trial, they were married for 13 years and had one child.

In addition to S.S. and Z.Z., two percipient witnesses testified for the prosecution. One witness testified she observed two "angry" men fighting and a "frightened" woman. Another witness testified she saw a car drive slowly down the street, "position[ ] itself in an angle," and then "crash[ ] into another vehicle, where . . . [a] young lady had just gotten out of her car." The witness thought it was "weird" defendant's car was positioned at an angle because two cars could drive by each other on that street. She did not think defendant's car was driving slowly when it crashed. After the crash, she saw a woman on the ground, observed the van "recklessly" reverse, and claimed the van "pursued to hit them" again before ending up on the sidewalk. The witness did not believe the crash was an accident.

Finally, a person who lived near the scene of the collision provided two videos depicting the incident to law enforcement. Both videos were admitted into evidence and shown to the jury.

II.

DEFENSE CASE

Defendant testified in his own defense and claimed the collision was an accident. He knew S.S. was going on a work trip but did not know she carpooled with anyone. The next day, S.S. told defendant to meet at her car so he could help with her belongings because her work trip was cancelled. Defendant drove to the location and repeatedly called S.S., but she did not answer her phone. Defendant testified he was "pretty nervous and really concerned about this." His body also "was shaking." Although defendant acknowledged he could track the location of S.S.'s phone, he denied tracking her phone on the day of the incident. When he arrived at the location, he saw a male stranger holding his wife's bag and drove toward the man but "didn't press on the brake[s] hard enough." He testified he did not mean to hit or kill them. He loved his wife and did not want to hurt her.

After the collision, defendant turned his car around to park next to them. Defendant testified he drove his car onto the sidewalk because he "was very nervous and panic[ked]." Defendant got out of his car and asked Z.Z. why he was holding S.S.'s bag. He described his interaction with Z.Z. as an argument with some "push and pulling."

5

DISCUSSION

Defendant challenges the sufficiency of the evidence supporting his conviction for the attempted murder of Z.Z. He also contends the court erred by not instructing the jury on simple assault as a lesser included offense to assault with a deadly weapon. He likewise argues the court erred by not instructing the jury on simple assault and simple battery of a spouse as lesser included offenses to corporal injury on a spouse. Finally, he claims the abstract of judgment should be corrected to reflect his conviction for second degree attempted murder. We agree with defendant's latter contention and direct the trial court to correct the abstract of judgment. Defendant's remaining arguments are without merit.

I.

SUBSTANTIAL EVIDENCE SUPPORTED THE ATTEMPTED MURDER CONVICTION

Defendant argues we should reverse his conviction on count 2, the attempted murder of Z.Z., because there was insufficient evidence he intended to kill Z.Z. He also claims the prosecution did not disprove his heat of passion defense so his attempted murder conviction should be reduced to attempted voluntary manslaughter. To the contrary, there is substantial evidence in the record supporting defendant's conviction.

"Where, as here, a defendant challenges the sufficiency of the evidence on appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.) "[I]t is the jury, not the reviewing court, that must weigh the evidence, resolve conflicting inferences, and determine whether the prosecution established guilt beyond a

6

reasonable doubt." (*Ibid.*) "[W]hether the prosecutor relied upon direct or circumstantial evidence . . . reversal is not warranted, even where ""the circumstances might also reasonably be reconciled with a contrary finding."" (*People v. Vargas* (2020) 9 Cal.5th 793, 820.)

To prove attempted murder, "the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) Attempted murder requires a showing of express malice "'that is, the assailant either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.)

Here, the record includes sufficient evidence of defendant's intent to kill Z.Z. The video evidence depicts defendant's van driving directly at Z.Z. who was standing by S.S.'s car on a residential street. After striking Z.Z., defendant reversed his van near a neighboring home and accelerated back toward Z.Z. a second time. The video depicts Z.Z. running away while defendant's van continued to chase Z.Z. onto the sidewalk. Defendant ultimately stopped his van on the sidewalk to the right of S.S.'s car. Defendant and Z.Z. subsequently engaged in a verbal altercation. S.S. testified they pushed each other for "tens of seconds," but the video evidence depicts them hitting each other for a longer period of time. A witness also testified she observed defendant position his van before crashing into Z.Z. and did not believe the crash was an accident. Based on all of this evidence, the jury could have concluded beyond a reasonable doubt that defendant specifically intended to kill Z.Z.

Defendant points to other evidence. He argues he drove his van "at a speed which did not cause significant injuries to Z.Z." He also notes he struck Z.Z. with the left side panel of the van and did not make any threats to kill Z.Z. He accordingly claims his driving "may have been consistent with a general intent to assault or intimidate the victim" rather than a specific intent to kill him. Even assuming the latter evidence suggests a contrary finding, we cannot reweigh the evidence and must presume every fact in support of the judgment. (*People v. Vargas*, *supra*, 9 Cal.5th at p. 822.) Reviewing the record in the light most favorable to the judgment, substantial evidence supported the jury's finding that defendant specifically intended to kill Z.Z.

Defendant alternatively argues the prosecution did not present sufficient evidence to disprove his heat of passion defense. He notes S.S. left for the night, did not answer her phone, and was later found with another man. Based on these facts, he contends an ordinary reasonable man would act from passion rather than judgment. We disagree.

A murder may be reduced to voluntary manslaughter if the defendant acted in a heat of passion arising from sufficient provocation. (*People v. Moye* (2009) 47 Cal.4th 537, 549.) The heat of passion requirement for manslaughter has a subjective and objective component. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.) "'The defendant must actually, subjectively, kill under the heat of passion.'" (*Ibid.*) Objectively, heat of passion exists if "'"at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment."'" (*People v. Beltran* (2013) 56 Cal.4th 935, 942.) If provocation is

properly presented, the prosecution has the burden of disproving provocation beyond a reasonable doubt. (*People v. Schuller* (2023) 15 Cal.5th 237, 254; *People v. Rios* (2000) 23 Cal.4th 450, 462.)

Here, the evidence failed to show defendant acted in a heat of passion. Defendant's own testimony was inconsistent with any finding that he subjectively acted under a heat of passion. Although defendant said he was nervous and shaking, he testified the crash was an accident, insisting he failed to step on the brakes. Objectively, a reasonable person of average disposition also would not have been prompted to act rashly upon seeing a man holding his wife's bag. There was no evidence of an extramarital affair as both S.S. and Z.Z. denied any impropriety. We accordingly will not disturb the jury's verdict finding defendant guilty of attempted murder. (*People v. Beltran*, *supra*, 56 Cal.4th at p. 948 ["'[J]urors . . . are . . . much better qualified to judge of the sufficiency and tendency of a given provocation, and much more likely to fix, with some degree of accuracy, the standard of what constitutes the average of ordinary human nature . . . .'"].)

## II.

### THE COURT WAS NOT REQUIRED TO INSTRUCT ON LESSER INCLUDED OFFENSES

Defendant next contends the court erred by not instructing the jury on simple assault as a lesser included offense to assault with a deadly weapon against S.S. (count 3). He likewise claims the court erred by not instructing the jury on simple assault and simple battery as lesser included offenses to inflicting corporal injury on a spouse (count 5). The court did not err.

9

## A. Applicable Law and Standard of Review

A trial court has a sua sponte duty to instruct a jury on a lesser included offense if there is substantial evidence indicating the defendant is guilty only of the lesser offense. (*People v. Lopez* (2020) 9 Cal.5th 254, 269.) "'"Substantial evidence" in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]'" that the lesser offense, but not the greater, was committed.'" (*People v. Manriquez, supra*, 37 Cal.4th at p. 584.) We review the trial court's decision to not instruct on a lesser included offense de novo. (*Ibid.*)

## B. Lesser Included Offense of Assault with a Deadly Weapon

The People concede, and we agree, that simple assault (§ 240) is a lesser included offense of assault with a deadly weapon (§ 245, subd. (a)(1)). (*People v. Golde* (2008) 163 Cal.App.4th 101, 115; *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.) Here, there was no substantial evidence from which a jury could reasonably conclude defendant committed the lesser offense of assault, but not assault with a deadly weapon. Indeed, there simply was no evidence the assault was committed with a non-deadly weapon. Although defendant claims he did not use his van in a deadly manner because he drove past S.S., the video evidence showed defendant drive his van at both S.S. and Z.Z., causing S.S. to fall to the ground. "[T]here is no way that driving a car toward a person can constitute simple assault but not assault with a deadly weapon or force likely to cause great bodily injury." (*Golde*, at p. 117 [finding the trial court did not err by not instructing on simple assault as a lesser included offense of assault with a deadly weapon where the defendant drove his car at the victim].)

10

Defendant also argues S.S. did not suffer significant injuries. We are not persuaded by this argument. "Whether or not the victim is injured is immaterial because [section 245, subdivision (a)(1)] focuses on use of a deadly weapon or instrument . . . ." (*People v. Russell* (2005) 129 Cal.App.4th 776, 782.)

In short, defendant was either guilty of using his van to assault S.S. or not guilty of any offense. For these reasons, the court was not required to instruct on simple assault as a lesser included offense, and we need not address the parties' harmless error arguments.

## C. *Lesser Included Offenses of Inflicting Corporal Injury on a Spouse*

Section 273.5 prohibits willful infliction of corporal injury on a spouse "resulting in a traumatic condition." (§ 273.5, subds. (a)-(b).) A "traumatic condition" is "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, *whether of a minor or serious nature*, caused by a physical force." (§ 273.5, subd. (d), italics added.) Simple assault (§ 240) and simple battery on a spouse (§ 243, subd. (e)) do not require a traumatic condition and are lesser included offenses of corporal injury on a spouse (§ 273.5). (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1457; *People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952.)

According to defendant, the court should have instructed on the lesser included offenses because the jury could have found the prosecution failed to prove S.S. suffered a traumatic condition beyond a reasonable doubt. He notes the prosecution did not provide any pictures, medical documents, or medical testimony and suggests S.S.'s testimony was inadequate to support a traumatic injury finding. Not so. S.S. testified she "somewhat bruised" her leg, scraped her leg, and hit her head after defendant ran his van into her.

11

She was transported by an ambulance to the hospital where she was treated. As noted, even minor injury may be sufficient for a section 273.5 offense. (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 771 [finding a traumatic condition where the victim had redness on her face and nose]; *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085–1086 [finding a traumatic condition where the victim suffered bruising].) Because the evidence showed S.S. suffered bodily injury, there was no evidentiary support for the theory that defendant could only be found guilty of the lesser offenses of assault or battery. The court therefore was not required to instruct on the lesser included offenses, and we need not address the parties' harmless error arguments.

## III.

### AN ERROR IN THE ABSTRACT OF JUDGMENT MUST BE CORRECTED

The jury convicted defendant of attempted murder (count 2) but did not determine the degree of attempted murder because the verdict forms did not address premeditation and deliberation. At sentencing, the court determined defendant was convicted of second degree attempted murder. The abstract of judgment, however, lists the crime as first degree attempted murder.

Defendant argues, and the Attorney General agrees, the abstract of judgment should be corrected to reflect a conviction for second degree attempted murder. We grant defendant's request and direct the trial court to correct the abstract of judgment. (See *People v. Phung* (2018) 25 Cal.App.5th 741, 761 [ordering correction of the abstract of judgment to accurately reflect the defendant's conviction].)

## DISPOSITION

The court is directed to correct the abstract of judgment to reflect defendant's second degree (not first degree) attempted murder conviction and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.