Filed 2/4/26  P. v. Jones CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHEYENNE PATRICE JONES,<br><br>    Defendant and Appellant. | H051995<br>(Santa Clara County<br> Super. Ct. No. C2116299) |

Found guilty of multiple offenses, Jones contends on appeal that insufficient evidence supports her convictions for grand theft and assault with a deadly weapon. Jones also argues that the trial court erred by failing to sentence her to the presumptive low term set forth in Penal Code section 1170, subdivision (b)(6) (section 1170(b)(6)), in light of her youth and childhood trauma.[1]  Concluding that sufficient evidence supports Jones's convictions, and that the court did not abuse its sentencing discretion under section 1170(b)(6), we will affirm the judgment.

## I.    BACKGROUND

The Santa Clara County District Attorney charged Jones with nine counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 1 through 9), assault with a deadly weapon (§ 245, subd. (a)(1); count 10), reckless driving while evading police (Veh. Code, § 2800.2, subd. (a); count 11), and misdemeanor hit and run (Veh. Code, § 20002,

---

[1] Undesignated statutory references are to the Penal Code.

subd. (a); count 12).  The district attorney also alleged three circumstances in aggravation:  (1) that Jones was on parole or postrelease community supervision (PRCS) when she committed the offenses charged in counts 1 through 12; (2) that the manner in which Jones committed the offenses charged in counts 1 through 9 indicated planning, sophistication, or professionalism; and (3) that the offenses charged in counts 1 through 9 involved the taking of property of great monetary value.  (See Cal. Rules of Court, rule 4.421(a)(8), (9) & (b)(4).)

## A.     *Relevant Trial Evidence*

### 1.     *Count 3:  Grand Theft*

Within a month, Jones and a male coparticipant perpetrated a string of robberies and thefts at convenience stores and gas stations across the South Bay.  One theft was at a gas station in San Jose, where D.S., his brother, and a friend were buying cigarettes.  Jones began speaking to D.S. from the front passenger seat of a car driven by her coparticipant.  Because D.S. did not speak English, he proffered his iPhone to translate.  During this exchange, the driver said something to Jones, prompting her to snatch the phone from D.S.'s hands, then drove off with Jones and the phone.  D.S. reported the theft to the police but never recovered the phone.  Asked about the phone's value, D.S. replied, "[$]1,100 . . . was the price of the Apple phone at the time."  Jones admitted to police that she had taken the phone.

### 2.     *Count 10:  Assault with a Deadly Weapon*

Later the same month, Jones was observed driving a suspected stolen car.  Police officers initiated a high risk stop by blocking Jones's car with two of theirs.  Undeterred, Jones drove ahead and hit the front passenger side bumper of one patrol car.  She then drove her car directly at the still-occupied front driver's side of the second police car.  The impact of this second collision pushed the car so far back that Jones drove through the blockade.  The collision "completely tor[e] off" the second car's front bumper and caused the detective occupying it "minor neck pain" or "whiplash."

**B.** *Verdict and Bifurcated Trial*

The jury found Jones guilty as charged except as to count 3, for which the jury found Jones guilty of grand theft of D.S.'s cell phone, a lesser included offense of the charged robbery. The parties then stipulated to a court trial on the circumstances in aggravation. The court found true that (1) Jones was on parole or PRCS at the time she committed the offenses charged in counts 1 through 12, and (2) the manner of their commission indicated planning, sophistication, or professionalism.[2]

**C.** *Sentencing*

The probation officer recommended a prison term of 11 years eight months; the district attorney sought 13 years. Counsel for Jones submitted certificates and letters showing Jones's in-custody participation in self-improvement, substance abuse, and college-equivalent courses. Arguing for a sentence in the "high single digits," counsel urged the court to consider Jones's youth (25 years old at the time of the offenses) and mitigating information reflected in the probation report. This information included what counsel characterized as Jones's "rough go as a child"—her mother's incarceration, her being raised by a single "sovereign citizen" father, and her childhood experience of sexual assault. Counsel told the court that Jones continued to be susceptible to her father's influence, and that she likely would have accepted responsibility earlier but for his urging her to proceed to trial. The court also heard a victim impact statement from one of the robbery victims and a brief statement from Jones, who asserted her "right to subrogation" in accordance with her own sovereign citizen beliefs.

The court, following probation's recommendation, sentenced Jones to 11 years eight months: The middle term of three years for count 1; consecutive terms of one year for each of counts 2 through 10; a concurrent middle term of two years for count 11; and

---

[2] The court found not true the third alleged aggravating circumstance—that the robberies involved the taking of property of great monetary value.

3

a concurrent six-month maximum for count 12, the misdemeanor.  The court noted, in addition to already adjudicated aggravating circumstances, that the offenses were serious and violent and involved threats of great bodily harm, and that Jones was on supervision at the time of the offenses and had previously been terminated from probation.  Against these factors and Jones's "huge criminal history," the court recognized Jones's youth and the "life-long journey of betterment" she had started while in custody as reasons for imposing a middle term sentence.  The court noted that the sentence represented a "win" for Jones and that "definitely a lot . . . could have pushed the [c]ourt in the other way."

Jones timely appealed.

## II.    DISCUSSION

Jones disputes the sufficiency of evidence that D.S.'s cell phone had a value exceeding $950, as required for grand theft (count 3), or that she used her car in a manner likely to produce death or great bodily injury, as required for assault with a deadly weapon (count 10).  She also argues the trial court abused its sentencing discretion under section 1170(b)(6) by failing to impose the low term for count 1, notwithstanding her youth and childhood trauma.  (§ 1170, subd. (b)(6).)  We see no merit in her claims of error.

### A.    *Sufficiency of the Evidence*

Jones's challenge to counts 3 and 10 call for us to " 'review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)  " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 330 (*Grant*).)  And " '[w]e presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.' " (*Covarrubias*, at p. 890.)  But " '[a] reasonable inference may not

4

be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork.' " (*Grant*, at p. 330.)

### 1. *Count 3 (Grand Theft)*

To prove grand theft, the prosecution must prove (among other elements) that Jones stole property valued at more than $950. (See §§ 487, subds. (a) & (c), 490.2, subd. (a); *Grant*, *supra*, 57 Cal.App.5th at p. 328.)[3] In measuring value, "the reasonable and fair market value shall be the test." (§ 484, subd. (a); *People v. Romanowski* (2017) 2 Cal.5th 903, 914.) "The fair market value of an item is 'the highest price obtainable in the market place' as between 'a willing buyer and a willing seller, neither of whom is forced to act.' " (*Grant*, at p. 329.) "The opinion of an owner of personal property is in itself competent evidence of the value of that property, and sufficient to support a judgment based on that value." (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921; *People v. Henderson* (1965) 238 Cal.App.2d 566 (*Henderson)* [similar].) "The weight to be given the owner's testimony as to value is for the trier of the fact." (*Henderson*, at p. 567.)

The sole evidence presented at trial relating to the value of D.S.'s cell phone was D.S.'s testimony that "[$]1,100 . . . was the price of the Apple phone at the time," when asked if he "remember[ed] how much [his] phone was worth." Jones argues this testimony is not substantial evidence of fair market value, reasoning that Suarez was testifying to what he had paid for a then-new iPhone, whereas the prosecution presented

---

[3] Section 487, subdivision (a) sets forth the $950 threshold value, while subdivision (c) omits the same express threshold from the prohibition against taking property "from the person of another." But the $950 threshold for violations of section 487, subdivision (c) derives from section 490.2, subdivision (a)—enacted by the voters as part of Proposition 47 (Gen. Elec. (Nov. 4, 2014).). (§ 490.2, subd. (a) [providing that "where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950)," the taking "shall be considered petty theft and shall be punished as a misdemeanor"].)

no evidence that D.S.'s phone was still new or undepreciated. While Jones's interpretation is plausible, our substantial evidence review requires us to view this testimony in the light most favorable to the judgment. D.S. specifically characterized $1,100 as the "value" of his phone, not its purchase price. Nor does the context of his testimony compel a contrary interpretation: The prosecutor did not ask D.S. to opine on the value of a new Apple iPhone or to report the purchase price he had paid; she asked him the *worth* of the phone he possessed. To the extent D.S. did not specify whether by "at the time" he meant at the time of the theft or at the time of purchase, here too our obligation to view the evidence in favor of the judgment controls: We infer that the jury understood D.S. to mean at the time of the theft. We note as well that Jones "did not cross-examine as to value, offered no evidence regarding it, and never suggested a lesser valuation." (*Henderson*, *supra*, 238 Cal.App.2d at p. 566.)[4] D.S.'s undisputed opinion of his phone's value thus supplied an adequate basis for the jury to find Jones guilty of grand theft.

### 2.    *Count 10 (Assault with a Deadly Weapon)*

Jones next argues that insufficient evidence supports her conviction for assault with a deadly weapon. A deadly weapon under section 245, subdivision (a)(1) (section 245(a)(1)) is " ' "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." ' " (*People v. Russell* (2005) 129 Cal.App.4th 776, 782; *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028–1029 [same].) Courts have thus concluded that a car may be a deadly weapon depending on the manner it is used. (*People v. Bipialaka* (2019) 34 Cal.App.5th 455, 458; see also *People v. Perez* (2018) 4 Cal.5th 1055, 1065 (*Perez*); *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1186–1190.) Whether an object is

---

[4] Indeed, in successfully arguing to the jury that count 3 lacked the element of force/fear and therefore did not qualify as a robbery, Jones's trial counsel essentially conceded that Jones had committed grand theft.

likely to produce death or great bodily injury "must rest on evidence of how the defendant actually 'used' the object," and the "potential harm" from such use. (*In re B.M.* (2018) 6 Cal.5th 528, 534, 535 (*B.M.*).)

We recognize that a reasonable jury could draw different inferences about Jones's use of the car here. But viewed in the light most favorable to the judgment, the record supports Jones's conviction. At trial, the prosecution presented evidence that Jones, immediately after hitting the occupied patrol car, drove directly at the detective in the second police car, and struck the driver's side with sufficient force to ram the car out of her escape route and injure the detective. The impact was also sufficiently severe that the car was deemed unsafe to drive. This supports a reasonable inference that Jones used the car in a manner contemplated by section 245(a)(1).

Jones's contrary arguments are unavailing. First, as to her manner of using the car, there is no evidence in the record to support Jones's assertion that she was driving at a "relatively low speed"—unlikely to cause great bodily injury—at the time of the collision. Indeed, the detective's testimony that a car "driving normally" and at "slow speed" would have been able to pass safely between his car and the patrol car without hitting either warrants the opposite inference—that Jones was driving neither normally, nor slow. Nor does the degree of damage to the car or of injury to its occupant detract from the sufficiency of the evidence: " '[C]onviction for assault with a deadly weapon does not require proof of an injury or even physical contact.' " (*B.M.*, *supra*, 6 Cal.5th at p. 535.) While "the extent of actual injury or lack of injury" is a relevant consideration, the absence of more severe injury does not establish that "the nature of the object or the way it was used was not capable of producing or likely to produce death or serious harm." (See *ibid.*) It is enough "that serious injury was likely, even if it did not come to pass." (*Ibid.*) That standard is satisfied here by the evidence that Jones directly and deliberately rammed the side of the car where the detective was seated and did so with force sufficient to dislodge it from her path.

7

Second, as to the requisite intent, Jones argues that the evidence shows no intent "to . . . use the car as a deadly weapon," but no such specific intent is required for this general intent crime. (*Perez*, *supra*, 4 Cal.5th at p. 1066.) As we have explained, "[w]hether an object is a deadly weapon under section 245" turns "not . . . on whether the defendant intended it to be used as a deadly weapon" but on the manner of use; the only intent necessary is "that . . . she willfully used the object in a manner that . . . she knew would probably and directly result in physical force against another." (*Perez*, at p. 1066.) By aiming her car directly at the detective's side of the car and ramming it, Jones meets this standard.

Finally, Jones would have us favorably compare her case to more egregious uses of motor vehicles affirmed as sufficient under section 245(a)(1). But in reviewing a claim for sufficiency of the evidence, we deferentially consider only "whether the [fact finder's] finding of a reasonable doubt is supportable in light of the evidence." (See *Perez*, *supra*, 4 Cal.5th at p. 1066.) Decisions affirming section 245(a)(1) convictions involving more flagrantly assaultive uses of motor vehicles do not define the minimum threshold for future cases.

Because there is sufficient evidence to permit a reasonable jury to infer that Jones used her car in a manner likely to cause great bodily injury, we discern no basis to reverse Jones's conviction on this count.

## B. *Claim of Sentencing Error*

"We review discretionary sentencing decisions for abuse of discretion." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 764–765 *(Knowles)*.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all." (*Id.* at p. 765.) "The burden is on the party challenging the sentencing decision to show that the court has abused its discretion."

(*Ibid.*)  And we do not presume error from a silent record.  (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

Jones argues the trial court abused its sentencing discretion by failing to apply section 1170(b)(6)'s mandate to "order imposition of the lower term if" certain enumerated factors were "a contributing factor in the commission of the offense."  These factors include "experience[] [of] psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence" (§ 1170, subd. (b)(6)(A)) and "youth"—defined as under the age of 26 years—"at the time of the commission of the offense" (§ 1170, subd. (b)(6)(B)).

In reviewing a trial court's failure to expressly apply section 1170(b)(6)'s lower term presumption, we consider first whether the presumption has been " 'trigger[ed]' by an 'initial showing' of the applicability of the statute."  (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991 (*Fredrickson*).)  "[A]n initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that [a mitigating circumstance identified in section 1170(b)(6)] may have been a *contributing factor* in commission of the underlying offense."  (*Fredrickson*, at p. 994, italics added.)  Absent such an "[initial] showing," there is "no basis . . . to conclude the trial court's failure to expressly consider the lower term presumption" was an abuse of discretion.  (See *id.* at pp. 988, 994; see also *Knowles*, *supra*, 105 Cal.App.5th at p. 765 [explaining that the plain language of § 1170(b)(6) makes clear that "the mere fact a defendant is young or has suffered past trauma is insufficient—either or both must be 'a contributing factor in the commission of the offense' for the low term presumption to apply"].)

Jones characterizes as "uncontested" "that [her] youth and her childhood trauma were contributing factors to her offenses."  What was uncontested, however, is limited to the *fact* of Jones's youth and her experience of childhood trauma, documented in the probation report and highlighted by counsel at sentencing.  But there was no evidence or argument at sentencing "to put [the] trial court on notice" that either factor "may have

9

been a *contributing* factor" in Jones's commission of the robberies, theft, evasion, or assault. (*Fredrickson*, *supra*, 90 Cal.App.5th at p. 994, italics added.) Without this showing, the court did not abuse its discretion in not treating the low term as presumptive. (See *id.* at p. 993, fn. 7 [noting that "the Legislature opted to require a finding of causation as to all of the [mitigating] circumstances" in § 1170(b)(6)].)

### III.    DISPOSITION

The judgment is affirmed.

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

WILSON, J.

*People v. Jones*
H051995